Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Stephenson, S.J.

DOGWOOD VALLEY CITIZENS
ASSOCIATION, INC., ET AL.

v.    Record No. 031053

                          OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
                                  January 16, 2004

WILLIAM A. WINKELMAN

            FROM THE CIRCUIT COURT OF GREENE COUNTY
                    Daniel R. Bouton, Judge

                                I.

      The sole issue that we consider in this appeal is whether

a non-stock Virginia corporation is a property owners'

association within the intendment of the Property Owners'

Association Act, Code §§ 55-508 through -516.2.

                                II.

      William A. Winkelman filed his bill of complaint against

the Dogwood Valley Citizens Association, Inc. ("DVCA") and

others.  He alleged that DVCA improperly conducted a non-

judicial sale of two lots that he owned.  He asserted, among

other things, that DVCA is not a property owners' association

within the intendment of the Virginia Property Owners'

Association Act because DVCA's recorded declarations do not

contain an express duty that required it to maintain the roads

or other common areas in the Dogwood Valley subdivision.

Alternatively, Winkelman argued that if the Act were

applicable, the Act only permitted DVCA to sell a unit on which DVCA has a recorded lien as opposed to the vacant lots that Winkelman owned.

At the conclusion of a bench trial, the circuit court held that DVCA is a property owners' association within the intendment of the Property Owners' Association Act. However, the court held that Code § 55-516(I) of the Act applied only to a "unit" and, therefore, this statute did not confer authority upon DVCA to sell Winkelman's vacant lots. The court entered a decree that voided the deeds that conveyed Winkelman's lots to the purchasers. DVCA appeals from the court's final decree, and Winkelman assigns cross-error.

III.

The circuit court considered the following evidence that is relevant for our resolution of this appeal. Winkelman is the record owner of two lots in the Dogwood Valley subdivision. The subdivision consists of approximately 320 lots that were divided during several phases. Declarations affecting the lots were recorded among the land records in Greene County. The declarations were imposed by the developers, Kermit R. Gallihugh, Barbara A. Gallihugh, Bradley K. Haynes, Betty G. Haynes, and B.K. Haynes Corporation. The developers transferred the roads and other common areas to

DVCA by a deed dated December 5, 1978, which is recorded among the land records in Greene County.

DVCA is a non-stock corporation.  According to its articles of incorporation, DVCA was created to provide for the maintenance of the roads and common facilities of the Dogwood Valley subdivision.  These articles and DVCA's bylaws purportedly authorized DVCA to impose fees and special assessments on the property owners in the subdivision pursuant to the applicable restrictive covenants.

The December 1978 deed that transferred the roads and common areas from the developers to DVCA contains the following paragraphs:

> "WHEREAS, in the aforesaid Deeds of Dedication and Protective Covenants, the Grantor has reserved the right to use, keep and maintain all of the roads and common facilities in the aforesaid subdivision; and
>
> "WHEREAS, the aforesaid Deeds of Dedication and Protective Covenants provide that the rights, duties and responsibilities as are created therein may be delegated by the Grantor to a committee of lot owners approved by the Grantor; and
>
> . . . .
>
> "WHEREAS, the property owners of Dogwood Valley have united and formed a corporation referred to herein as the Grantee, whose purpose is to see that the roads, public facilities and other common areas of Dogwood Valley Subdivision are properly maintained; and
>
> "WHEREAS, it is the desire of the Grantor herein, B. K. Haynes Corporation, now to convey to the Grantee, Dogwood Valley Citizens Association, Inc., all of the rights, duties and responsibilities

3

> which were created or may have been created by the aforesaid Deeds of Dedication and Protective Covenants; and
>
> "WHEREAS, it is the desire and intent of the Grantee to receive from the Grantor and accepts herein by the recordation of this deed all of the rights, duties and obligations which the Grantor has pursuant to the aforesaid Deeds of Dedication and statement of Protective Covenants.
>
> . . . .
>
> "The Grantor hereby further QUITCLAIMS, ASSIGNS, RELEASES and REMITS unto the Grantee, Dogwood Valley Citizens Association, Inc. any and all rights which it may have, both legal and equitable in all of the roads within the aforesaid subdivision, together with any other common areas or public areas not specifically set forth in this deed."

Certain restrictive covenants that affect the subdivision are contained in deeds of dedication, recorded from 1968 through 1973. These covenants confer upon the developers and their assignees the power to assess an annual fee "for the use, upkeep, and maintenance of the roads . . . and . . . other common facilities," and the covenants impose various obligations and restrictions on the developers and lot owners. Furthermore, the covenants applicable to parts of the subdivision, recorded among the land records in 1972 and 1973, authorize an increase in the maintenance fee based upon increased maintenance costs.

In 1997, DVCA adopted a special assessment of $35 per lot for all lots in the subdivision. Payment of the special

4

assessment was due February 1, 1998. DVCA notified all property owners in the subdivision, including Winkelman, of the amount of the assessment and the due date. Winkelman failed to pay the assessment timely. DVCA informed Winkelman that a memorandum of lien would be filed against his lots unless he promptly paid the assessment. Winkelman failed to do so. DVCA published a notice of the sale of Winkelman's lots in a newspaper of general circulation and notified him of the sale by certified mail pursuant to the provisions of Code § 55-516(I). DVCA conducted a non-judicial sale of Winkelman's lots at a public auction. Gary E. and Karen H. Lowe purchased one of Winkelman's lots, and Jason E. Tinder purchased the other lot.

IV.

Winkelman, relying upon the Property Owners' Association Act and this Court's decision in Anderson v. Lake Arrowhead Civic Association, Inc., 253 Va. 264, 483 S.E.2d 209 (1997), argues that DVCA is not a property owners' association within the intendment of the Property Owners' Association Act because DVCA does not have a duty, set forth in a document recorded among the land records in Greene County, that requires DVCA to maintain the roads or common areas. Therefore, Winkelman argues that DVCA lacked the statutory authority to conduct a non-judicial sale of his lots because such authority can only

be exercised by a property owners' association.  Responding, DVCA contends that the circuit court correctly concluded that DVCA is a property owners' association and that DVCA's duties to maintain the roads and common areas are contained in the declarations of the recorded documents.  We disagree with DVCA.

The Property Owners' Association Act is applicable "to developments subject to a declaration . . . initially recorded after January 1, 1959, associations incorporated or otherwise organized after such date, and all subdivisions created under the former Subdivided Land Sales Act."  Code § 55-508(A).  The Act defines "property owners' association" as "an incorporated or unincorporated entity upon which responsibilities are imposed and to which authority is granted in the declaration." Code § 55-509.  The Act defines "declaration" as

> "any instrument, however denominated, recorded among the land records of the county or city in which the development or any part thereof is located, that either (i) imposes on the association maintenance or operational responsibilities for the common area or (ii) creates the authority in the association to impose on lots, or on the owners or occupants of such lots, or on any other entity any mandatory payment of money in connection with the provision of maintenance and/or services for the benefit of some or all of the lots, the owners or occupants of the lots, or the common area."

Id.

We discussed the application of the Property Owners' Association Act in Anderson v. Lake Arrowhead Civic Association, supra. In Anderson, we summarized the following facts. H. Ryland Heflin and his wife, Lucille W. Heflin (collectively, Heflin), developed the Lake Arrowhead subdivision in Stafford County. The plats included the reservation of easements for the individual lots over roads and to the other common areas of the subdivision. Each recorded plat was subject to identical restrictive covenants that were recorded by deeds of dedication among the land records of Stafford County. When Heflin conveyed his interest in an individual lot to a purchaser, the deed referenced the easements contained in the plat of the section in which the lot was located and the covenants associated with that plat. 253 Va. at 267, 483 S.E.2d at 210.

Covenant 12 of the easement granted to Heflin the power to assign "all of the rights and powers, title, easements and estates reserved" to him, provided that the assignee would have the same "obligations and duties with respect to the land area concerned." Covenant 13 of the easement required each purchaser of a lot to pay Heflin or his assignee $20 each year for the first lot owned and $10 per year for each additional lot owned "to be used for general maintenance." Covenant 13 states that the "maintenance fee shall be a lien on the real

estate."  These covenants did not expressly require that Heflin, or his assignee, actually maintain the common areas of the subdivision.  Id.

Subsequently, Lake Arrowhead Civic Association, Inc., a Virginia non-stock corporation, was incorporated and its articles provided that the association's purpose was to "further and promote the community welfare of the property owners in the Lake Arrowhead Subdivision . . . and to handle and supervise any funds received for community betterment." The articles were subsequently amended to require that "[e]ach owner of any lot by acceptance of a deed therefore, whether or not it shall be expressed in any such deed or other conveyance, . . . [shall] covenant and agree to pay [the association]:  1) annual assessments or fees and, 2) special assessments for capital expenditures."  253 Va. at 267-68, 483 S.E.2d at 211.  Later, Heflin conveyed to the association various parcels of land consisting primarily of roads, lakes, beaches, and park areas within the subdivision.  The language in these deeds did not impose any duty upon the association to maintain the common areas.  253 Va. at 268, 483 S.E.2d at 211.

We applied Code §§ 55-508 and -509, and we held that

> "[r]eading these two definitions together, it is clear that in order to qualify under the [Property Owners' Association Act] an association must possess both the power to collect a fixed assessment or to make variable assessments and a corresponding duty

8

> to maintain the common area. In addition, these conditions must be expressly stated in a recorded instrument in the land records of the jurisdiction where some portion of the development is located."

253 Va. at 271-72, 483 S.E.2d at 213. We pointed out in Anderson that the language of the deed that conveyed the common areas from Heflin to the association failed to expressly require the association to maintain the common areas. Id.

Applying the plain language of Code § 55-509, as well as our decision in Anderson v. Lake Arrowhead Civic Association, we hold that DVCA is not a property owners' association within the meaning of the Property Owners' Association Act. DVCA has failed to identify any document, recorded among the land records of the jurisdiction where some property of the development is located, that expressly requires DVCA to maintain the common areas or the roads. This duty must be expressly stated in the recorded documents and may not be inferred or implied.

It is true, as DVCA observes, that Paragraph 3 of the subdivision's deed of dedication references an annual lot assessment not to exceed $15 for "the use, upkeep and maintenance of the roads . . . and . . . other common facilities." That declaration also provides that "[t]he right and responsibilities as created by this paragraph may be

9

delegated by the grantors to a Committee of lot owners within said subdivision . . . ."  Additionally, other paragraphs in the declaration and the statements of protective covenants refer to maintenance fees.  And, we note that one covenant specifically states:

> "The following shall be an additional covenant 'Each lot owner shall be responsible for damages to subdivision roads and other common facilities by his agents.  It is the intent of this covenant to limit the liability of the road maintenance fund for the cost of repair of roads and other common facilities, when the damage to the roads and common facilities was caused by the act or acts of an individual lot owner or his agent.' "

DVCA's reliance on these provisions, however, is misplaced.  DVCA is unable to identify any language in any recorded instrument that expressly requires DVCA to maintain the roads or common areas.  DVCA's failure to do so is fatal to its assertion that DVCA is a property owners' association within the meaning of the Property Owners' Association Act.  In view of this holding, we do not consider the litigants' remaining arguments.

V.

Accordingly, we hold that the circuit court erred when it concluded in its decree that DVCA is a property owners' association within the meaning of Code § 55-508, et seq.  We will reverse that portion of the circuit court's decree.  We will vacate the remaining portions of the circuit court's

10

decree that were based on the Virginia Property Owners' Association Act.  We will affirm those portions of the decree that voided the deeds that purported to transfer Lots 1 and 2 from Winkelman to the Lowes and Mr. Tinder.  We will also affirm those portions of the decree that relate to the recordation of the circuit court's order and the payment of real estate taxes on the lots.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and final judgment</u>.