PRESENT: All the Justices

KENNETH M. SHEPHERD, ET AL.

v. Record No. 160606

RACHELLE CONDE, ET AL.

OPINION BY
JUSTICE WILLIAM C. MIMS
April 13, 2017

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

In this appeal, we consider whether an unincorporated association is a "property owners' association" within the meaning of the Virginia Property Owners' Association Act, Code §§ 55-508 to 55-516.2 ("the Act").

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In 1988, Sentry Realty, Inc. ("Sentry") recorded a declaration of protective covenants and restrictions ("the Declaration") for Saddle Ridge Farms ("the Subdivision"). The Subdivision comprises six lots cumulatively encompassing approximately 86.7 acres in Fauquier County. The lots are owned as follows: Lot 1 by David W. Emerick, Sr. and Sandra E. Emerick; Lot 2 by Rachelle Conde and Norman Conde; Lot 3 by Kenneth M. Shepherd and Patricia E. Shepherd; Lot 4 by Anita L. Rau and Morton D. Rau; Lot 5 by John S. Schlenker, Jr. and Elizabeth M. Schlenker; and Lot 6 by George P. Kinsey, III and Cheryl A. Kinsey. The lots are served by a private road, North Saddle Ridge Court ("the Road").

The Declaration created an Architectural Control Committee ("the Committee"), an unincorporated association, to "have full authority to enforce" the Declaration. The Committee comprises the owners of the Subdivision's lots, with one vote for each lot.

In April 2014, a putative amendment to and restatement of the Declaration ("the First Amendment") was recorded in the name of all the lot owners and the Saddle Ridge Farm Home

Owners Association ("the Association").[1]  The First Amendment asserted that the Association was "governed in all respects by the HOA Act."  The First Amendment also asserted that the Declaration could be amended by two-thirds of the owners of the Subdivision's lots, and that the First Amendment had been adopted by more than that number.  The First Amendment was signed by all the lot owners except the Condes.

In June 2014, the Condes filed a complaint against the other lot owners and the Association.  They asserted that the Declaration could be amended only with the unanimous consent of all the lot owners.  They also asserted that the Association was not a party to or created by the Declaration or the First Amendment and that it had no authority under either of them.  They further asserted that the Committee was not a valid "property owners' association" under the Act because the Committee did not meet the qualifications for such an association under *Dogwood Valley Citizens Ass'n. v. Winkelman* (*Dogwood I*), 267 Va. 7, 590 S.E.2d 358 (2004), and *Anderson v. Lake Arrowhead Civic Ass'n*, 253 Va. 264, 483 S.E.2d 209 (1997).  They therefore sought a declaratory judgment that neither the Association nor the Committee had any authority under the Act, and that the First Amendment was invalid.

The defendants filed a counterclaim and a first amended counterclaim in August 2014.  In October 2014, a putative second amendment and restatement ("the Second Amendment") was recorded in the name of the Association.  The Second Amendment asserted that the Association was created by the Declaration.[2]  Like the First Amendment, the Second Amendment was signed

---

[1] The First Amendment asserted that the Association was a Virginia non-stock corporation.  The parties now agree that no such entity exists in the records of the State Corporation Commission, that this assertion was incorrect, and that the Association is an unincorporated association.

[2] This assertion is false.  The Declaration establishes only one unincorporated association, the Committee:  "an Architectural Control Committee (hereinafter called 'the Committee') is hereby established."  There is no mention of the Association in the Declaration.  To the contrary, the Declaration is clear that *the Committee* has "full authority" to enforce it.

2

by all the lot owners except the Condes. The Condes subsequently amended their complaint to seek a declaratory judgment that the Second Amendment also was invalid.

The defendants filed a second amended counterclaim. They asserted that the Road was a common area, and that the Declaration both obligated the Committee to maintain it and authorized the Committee to collect assessments for its maintenance. They further asserted that the Committee therefore was a "property owners' association" within the meaning of the Act. Repeating the Second Amendment's false assertion, they asserted that the Declaration created the Association. In addition, they alleged that the First Amendment and Second Amendment had each been adopted by a two-thirds majority vote as required by the Declaration and the First Amendment, respectively. They asserted that under the amendments, the Association was required to maintain the Road and authorized to collect assessments for its maintenance. They sought a declaratory judgment that the amendments had been validly adopted and that the Declaration, First Amendment, and Second Amendment were binding on all of the lot owners.

After trial and post-trial briefing, the circuit court entered a final order ruling that the Declaration was not a "declaration" within the meaning of Code § 55-509, that the Declaration did not create the Association, that neither the Committee nor the Association had authority under the Act, that all parties and their lots were bound by the Declaration, and that only the defendants and their lots were bound by the First Amendment and Second Amendment.

We awarded the defendants this appeal on the following assignments of error[3]:

---

The defendants have relied on this false assertion as the foundation for some of their arguments, in both their trial pleadings and their appellate briefs. We therefore must acknowledge it where it appears, but we will not allow it to affect our analysis.

[3] We granted the defendants' petition for appeal on four assignments of error. However, the fourth assignment of error asserts that "[t]he trial court erred when it failed to rule on the [defendants'] [r]equest for a [d]eclaratory [j]udgment that 'the Declaration is binding on all lot owners in the'" Subdivision. (Alteration omitted.)

3

1. The trial court erred in finding that the Association has no powers under the [Act] even though the Declaration and Declaration as amended provide the power to impose assessments for road maintenance and impose a duty to perform such maintenance.

2. The trial court erred in holding that the Declaration did not create an association under Virginia law.

3. The trial court erred in finding that a 100% majority is required in order to amend the Declaration of the Association.

## II. ANALYSIS

The gist of the defendants' challenge to the circuit court's judgment is that the court erred by ruling that the Declaration does not create a "property owners' association" within the meaning of the Act. Alternatively, if the court ruled correctly on that point, they assert that it erred by ruling that the 2014 amendments to the Declaration did not cure the defect(s) so that the Association qualified as a "property owners' association" within the meaning of the Act.

To evaluate whether either unincorporated association in this case (i.e., the Committee or the Association) qualifies as a "property owners' association" within the meaning of the Act, we must determine first whether the Declaration conferred the necessary attributes, then whether the amendments were validly adopted, and finally, if the amendments were valid, what effect they had. We therefore consider the defendants' three assignments of error in chronological order. We review the circuit court's interpretations of statutes and restrictive covenants de novo. *Luttrell v. Cucco*, 291 Va. 308, 313, 784 S.E.2d 707, 710 (2016) (statutes); *Fein v. Payandeh*, 284 Va. 599, 605, 734 S.E.2d 655, 658-59 (2012) (restrictive covenants). We also are mindful

---

It is clear that the term "'the Declaration'" as used in the assignment of error refers to the declaration recorded by Sentry in 1988, exclusive of any subsequent amendments, because that is how the defendants defined that term in both their petition for appeal and their opening brief. However, the circuit court expressly ruled in its final order that "[a]ll of the parties' properties are subject to the Initial Declaration." The assignment of error therefore asserts that the circuit court erred by not making a ruling that it did in fact make. Consequently, we dismiss this assignment of error as improvidently granted. *See* Rule 5:17(c)(1)(iii).

4

that restrictive covenants are disfavored and "construed most strictly against the grantor and persons seeking to enforce them." *Fein*, 284 Va. at 606, 734 S.E.2d at 659.

## A.  WHETHER THE DECLARATION CREATES A "PROPERTY OWNERS' ASSOCIATION"

In their second assignment of error, the defendants assert that the circuit court erred by ruling that the Declaration did not create a "property owners' association" within the meaning of the Act.  They make this assertion in two parts.  First, they assert that the circuit court erred by ruling that the Declaration was not a "declaration" within the meaning of Act.  Second, they assert that the Declaration creates a "property owners' association" within the meaning of the Act based on the statutory language of Code § 55-509.  We consider each of these arguments in turn.

## 1.  WHETHER THE DECLARATION IS A "DECLARATION" WITHIN THE MEANING OF THE ACT

The defendants assert that the circuit court erred by ruling that the Declaration does not qualify as a "declaration" within the meaning of the Act.  They argue that the court relied on our decision in *Dogwood Valley Citizens Ass'n v. Shifflett* (*Dogwood II*), 275 Va. 197, 654 S.E.2d 894 (2008).  They assert that we held in *Dogwood II* that a "declaration" qualifies under the Act if it creates an association that is obligated both to (1) maintain roads or common area *and* (2) assess fees to pay for such maintenance.  They argue that this holding does not correctly reflect the provisions of the Act because Code § 55-509 defines a "declaration" disjunctively as a recorded instrument that "*either* (i) imposes on the association maintenance or other operational responsibilities for the common area *or* (ii) creates the authority in the association to impose on lots, or on the owners or occupants of such lots, or on any other entity any mandatory payment of money."  (Emphasis added.)  They argue that to the extent *Dogwood II* requires an instrument to

5

*both* impose maintenance obligations *and* authorize assessments to qualify as a "declaration" within the meaning of the Act, *Dogwood II* contradicts the statute.

We agree with the defendants that the definition of "declaration" currently codified in Code § 55-509 states these two elements (i.e., responsibility to maintain the common area and authority to impose assessments) in the disjunctive. However, that was not the issue before us in *Dogwood II*. Rather, the issue was whether the mere recordation of a corporation's articles of incorporation and bylaws transmuted those documents into a "declaration" within the meaning of the Act, thereby transmuting the corporation into a "property owners' association" within the meaning of the Act. 275 Va. at 200, 202, 654 S.E.2d at 895, 896. Citing *Anderson* and *Dogwood I*, we did state that the definition of a "property owners' association" required a declaration that "impose[d] on an association *both* the power to assess fees for road and common facilities maintenance *and* the duty to perform such maintenance." *Id.* at 200, 654 S.E.2d at 895 (emphases added).[4]

In all three cases—*Anderson*, *Dogwood I*, and *Dogwood II*—our holding that Code § 55-509 requires a "property owners' association" to have *both* responsibility to maintain the common area *and* authority to impose assessments is based not on the Act's definition of "declaration," where the elements are disjunctive, but on its definition of "property owners' association," where the elements are conjunctive. We therefore reject the defendants' argument that our holding in *Dogwood II* contradicts Code § 55-509.

---

[4] In *Anderson* we ruled that a civic association was not a "property owners' association" within the meaning of the Act because it had the power to collect maintenance fees but no duty to maintain the common areas. 253 Va. at 272-73, 483 S.E.2d at 213-14. In *Dogwood I*, we likewise ruled that a citizens' association was not a "property owners' association" because no instrument recorded in the land records imposed a duty to maintain the common area. 267 Va. at 13-14, 590 S.E.2 at 361.

The Condes argue that the circuit court correctly ruled that the Declaration was not a "declaration" within the meaning of the Act because it neither authorizes the collection of an assessment nor imposes a duty to maintain the common area. On the latter point, they further argue that the Declaration does not even designate a common area to be maintained. They assert that the Declaration neither conveys nor leases any common area to the Committee. They also assert that Paragraph 21 allows the lot owners to dedicate the Road to public use in the future, so it cannot be common area. We disagree with these assertions about common area.

Code § 55-509 defines "common area" as "property within a development which is owned, leased or required by the declaration to be maintained or operated by a property owners' association for the use of its members and designated as common area in the declaration." Consequently, property need not be conveyed or leased to a property owners' association to qualify as "common area" so long as such an association is required to maintain or operate the property for the use of its members, and the property is designated as common area in the declaration. In this case, we conclude that the demarcation of the Road as an easement on the plat incorporated into the Declaration is sufficient to fulfill the designation requirement of the statutory definition.[5]

The remaining question relating to whether there is "common area" is whether the Declaration requires the Committee to maintain or operate the Road for the use of its members, i.e., the owners of the six lots. That question is inextricably intertwined with the broader

_____

[5] Paragraph 21's provision allowing future public dedication of the Road does not alter our conclusion. The Declaration does not hover between states of existence awaiting the occurrence or non-occurrence of a contingent, future, extrinsic event. Whatever effect dedication of the Road may have when, if ever, it occurs, the mere possibility of dedication in the future does not alter the present analysis of whether the Subdivision has "common area" or whether the Declaration is a "declaration."

question of whether the circuit court erred by ruling that the Declaration did not create any "property owners' association" within the meaning of the Act, which we consider below.

## 2. THE DEFINITION OF "PROPERTY OWNERS' ASSOCIATION"

The defendants argue that the interdependence of the definitions of "declaration," "common area," and "property owners' association" in Code § 55-509 creates ambiguity because the definition of each term incorporates both of the other two, yet taken together they are inconsistent. In light of these inconsistencies, the defendants argue, the disjunctive use of the elements in the definition of "declaration" should control the definition of "property owners' association." We disagree.

"[A] statute is ambiguous when its language is capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness of definiteness, particularly where its words have either no definite sense or else a double one." *Newberry Station Homeowners Ass'n v. Board of Supervisors*, 285 Va. 604, 614, 740 S.E.2d 548, 553 (2013) (internal quotation marks and citation omitted). Assuming for the sake of argument that Code § 55-509 is ambiguous as the defendants assert, we may resolve such ambiguity by consulting legislative history. *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 385, 786 S.E.2d 144, 147 (2016).

The General Assembly enacted the Act in 1989. 1989 Acts ch. 679. In the original enactment, Code § 55-509 defined a "declaration" in relevant part as

> any instrument, however denominated, recorded among the land records of the county or city in which the development or any part thereof is located, that *either* imposes on the association maintenance or operational responsibilities for the common area *and* creates the authority in the association to impose on lots, or on the owners or occupants of such lots, or on any other entity any mandatory payment of money in connection with the provision of maintenance or services, or both, for the benefit of some or all of the lots, the owners or occupants of the lots, or the common area."

8

*Id.* (emphasis added.) It defined "property owners' association" simply as "an incorporated or unincorporated entity that is referred to in the declaration," excluding certain associations defined by other statutes not relevant here. *Id.*

The original definition of a "declaration" in the 1989 enactment created a manifest ambiguity by pairing "either" with "and," rather than with "or." The General Assembly eliminated this ambiguity in 1991 by amending and reenacting Code § 55-509 to replace the "and" with "or," along with other changes not relevant here. 1991 Acts ch. 667. At the same time and in the same enactment, the General Assembly also amended the definition of "property owners' association" to mean "an incorporated or unincorporated entity upon which responsibilities are imposed *and* to which authority is granted in the declaration." *Id.* (emphasis added). Thus, at the same time and in the same enactment, the General Assembly affirmatively acted both to make the elements clearly disjunctive in the definition of "declaration" and clearly conjunctive in the definition of "property owners' association."

"When interpreting and applying a statute, we assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words." *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 19 n.2, 736 S.E.2d 910, 915 n.2 (2013) (internal quotation marks and citation omitted). This principle cannot be more true than here, where the legislature has amended the same code section in two places at the same time with divergent effects. We therefore must assume that the General Assembly intended the elements to be disjunctive in the statutory definition of "declaration" but conjunctive in the definition of "property owners' association." Accordingly, we must reject the defendants' argument that the disjunctive use in the definition of "declaration" controls the definition of "property owners' association."

The defendants also assert that Code § 55-509 defines a "property owners' association" as an entity "upon which responsibilities are imposed and to which authority is granted in the

9

declaration." They argue that the Declaration created an unincorporated association comprising the Subdivision's lot owners, and that the Declaration imposed responsibilities and granted authority.[6]

As noted above, Code § 55-509 requires a "declaration" to "either (i) impose[] on the association maintenance or operational responsibilities for the common area or (ii) create[] the authority in the association to impose . . . any mandatory payment of money in connection with the provision of maintenance and/or services." A declaration must both impose responsibilities and authorize assessments before an entity qualifies as a "property owners' association" as defined in that code section. These elements must be fulfilled by language "'expressly stated'" in the Declaration. *Dogwood I*, 267 Va. at 13, 590 S.E.2d at 361 (quoting *Anderson*, 253 Va. at 272, 483 S.E.2d at 213).

Paragraph 1 of the Declaration imposes on the Committee the duty to enforce the Declaration. Paragraph 22 requires the Road to be maintained, and requires the lot owners to pay a pro-rata share of the cost of such maintenance. Taking these provisions together, we conclude that they expressly impose upon the Committee a duty to maintain the Road and authorize it to impose a variable assessment of one-sixth of the cost of such maintenance on the owners of each respective lot. Consequently, the Declaration fulfills the qualifications of a "declaration" and the Committee fulfills the qualifications of a "property owners' association" within the meaning of the Act.[7] Accordingly, the circuit court's rulings to the contrary were erroneous and must be reversed.

---

[6] In their opening brief, the defendants imply that *the Association* is the unincorporated association created by the Declaration. However, as noted above, there is no mention of the Association in the Declaration. Consequently, our discussion of the unincorporated association created by the Declaration is limited exclusively to the Committee.

[7] Accordingly, the Condes' other arguments about "common area" being without merit as discussed above, the Road fulfills the requirements to qualify as a "common area" under the Act.

However, this conclusion does not end our review because the defendants assert not only that the Committee is a "property owners' association" within the meaning of the Act, but that the Association is as well. Because, as noted above, the Declaration neither imposes responsibility on the Association nor authorizes it to impose assessments, the Declaration does not qualify the Association to be a "property owners' association." We therefore must consider whether the amendments were validly adopted and whether they succeeded where the Declaration did not.

### B. WHETHER THE AMENDMENTS MAY BE ADOPTED BY A TWO-THIRDS MAJORITY VOTE

In their third assignment of error, the defendants assert that the circuit court erred by ruling that the First Amendment and Second Amendment applied only to them, to the exclusion of the Condes, because the amendments were not adopted by unanimous consent. They argue that, while the general rule is that a restrictive covenant cannot be modified except by consent of all the affected lot owners, this Court recognized in *Barris v. Keswick Homes, LLC*, 268 Va. 67, 71, 597 S.E.2d 54, 57 (2004) that a restrictive covenant may itself provide for modification by a lesser number. They assert that Paragraph 27 of the Declaration sets the threshold at two-thirds of the lot owners. It provides that

> These covenants are to run with the land and shall be binding on all parties and all persons claiming under them and must be in full force and effect for a period of not less than twenty-five (25) years from date of recordation and shall automatically be extended for successive twenty-five (25) year periods. Changes cannot be made unless passed by a vote of two-thirds of the then record owners of the lots in the subdivision.

The same provision appears as Paragraph 26 of the First Amendment.

The defendants argue that the plain meaning of this language permits the lot owners to amend any part of the Declaration, and subsequently the First Amendment, by a two-thirds

11

majority vote. Each of the amendments was approved by all of the lot owners except the Condes, for a five-sixths majority. Thus, they continue, the First Amendment and Second Amendment were validly adopted according to the requirements set forth in the Declaration and First Amendment, respectively, and are binding on all the lot owners.

The Condes argue that the plain meaning of this language permits a two-thirds majority vote to modify only (1) the original duration of the Declaration, (2) the fact that it automatically renews, or (3) the duration of the automatic renewal periods. Consequently, they continue, the general, unanimous-consent requirement applies to modifications of any other provisions of the Declaration unless there is other language permitting them to be modified by a lesser number. The Condes assert that the only other provision that mentions modification of the Declaration is Paragraph 24, which permits Sentry, as the declarant, "or its designee . . . to modify any of the provisions of these covenants to alleviate hardship." Paragraph 24 does not apply here, the Condes argue, so the First Amendment and Second Amendment are invalid because they were not adopted by unanimous consent.

As noted above, restrictive covenants are disfavored and ambiguities are construed against the party seeking to enforce the covenant. *Barris*, 268 Va. at 71, 597 S.E.2d at 57. However, we "will enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable." *Fein*, 284 Va. at 606, 734 S.E.2d 659. We also will enforce them "if it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning by definite and necessary implication." *Scott v. Walker*, 274 Va. 209, 213, 645 S.E.2d 278, 280 (2007).

The parties agree that Paragraph 27 permits certain changes to be made by a two-thirds majority vote. They dispute only what changes the paragraph applies to. The paragraph does not expressly define its scope. However, we do not believe that this omission creates an ambiguity.

12

Paragraph 27 comprises two sentences. The first begins with "These Covenants," meaning the Declaration, and that is the subject of every verb in the sentence: the Declaration "[is] to run with the land;" the Declaration "shall be binding;" the Declaration "must be in full force . . . for twenty-five (25) years;" the Declaration "shall automatically be extended for successive twenty-five (25) year periods." We therefore conclude that the Declaration is the focus of the paragraph and that the "changes" mentioned in the second sentence are changes to the Declaration in its entirety, not changes only to those attributes of the Declaration set forth in the first sentence, such as the twenty-five-year periods of duration or the automatic renewal.

Accordingly, the circuit court erred by ruling that the First Amendment and Second Amendment were binding only on the defendants, to the exclusion of the Condes. Paragraph 27 of the Declaration and the identical language in Paragraph 26 of the First Amendment allowed the lot owners to adopt the First Amendment and Second Amendment, respectively, by a two-thirds majority vote, and such amendments are binding on all the lot owners.

## C. WHETHER THE ASSOCIATION IS A "PROPERTY OWNERS' ASSOCIATION" WITHIN THE MEANING OF THE ACT

In their first assignment of error, the defendants assert that "[t]he trial court erred in finding that *the Association* has no powers under the [Act] even though the Declaration and Declaration as amended provide the power to impose assessments for road maintenance and impose a duty to perform such maintenance." (Emphasis added.) Unlike the second assignment of error, discussed above, this assignment of error does not assert that the circuit court erred by failing to rule that the Declaration created *any* unincorporated association that qualified as a "property owners' association" within the meaning of the Act. Rather, it asserts that the circuit court erred by ruling that the Association *specifically* is not a "property owners' association" within the meaning of the Act.

13

The defendants argue that evidence in the record establishes that the Association has paid to maintain the Road and has imposed assessments to collect the costs of such maintenance. However, that is not the standard to qualify as a "property owners' association" within the meaning of the Act. To the contrary, as discussed at length above in our analysis of the second assignment of error, the standard is that the declaration must impose a duty to maintain common area and authorize the imposition of assessments for the costs of such maintenance. Our review of the Second Amendment establishes that the Association does not fulfill either requirement.[8]

Like Paragraph 2 of the Declaration, Paragraph 1 of the Second Amendment provides that each lot owner is automatically a member of *the Committee*. *Cf.* Code § 55-509 (defining a "development" as, in relevant part, "real property . . . subject to a declaration . . . with respect to which any person, by virtue of ownership of a lot, is a member of" a property owners' association). Nothing in the Second Amendment provides who the members of the Association are or how they become members. The Second Amendment certainly does not provide that one becomes a member of *the Association*, rather than or in addition to *the Committee*, by virtue of owning a lot within the Subdivision.

More importantly, unlike Paragraph 1 of the Declaration, no provision in the Second Amendment confers a general duty on any entity to enforce it. However, all the powers specifically conferred on the Committee by Paragraphs 3, 4, 5, 6, 7, 8, 11, 15, 18, and 19 of the Declaration (relating to the approval of signs, commercial activities, parking, and placing or altering improvements including structures, fences, swimming pools, and tennis courts) are replicated in Paragraphs 2, 3, 4, 5, 6, 7, 10, 14, 16, and 17 of the Second Amendment as powers

---

[8] As noted above, the Second Amendment asserts that the Association was created by the Declaration. We have refuted that assertion because the Declaration makes no mention of the Association at all.

14

specifically conferred (again) on *the Committee*. Paragraph 24 of the Declaration has been modified and appears in Paragraph 22 of the Second Amendment, now empowering *the Committee* rather than Sentry (or the Association) "to modify any of the provisions of these covenants to alleviate hardship." Paragraph 12 of the Second Amendment includes a power not conferred on the Committee in the Declaration, that of approving animals other than horses, cattle, or household pets, but again confers this power on *the Committee*, not the Association. Thus, where the Second Amendment confers power, it confers it upon the Committee rather than the Association.

This pattern persists with regard to the duty to maintain common area and the authority to impose assessments. Paragraph 21 of the Second Amendment replaces Paragraph 22 of the Declaration by requiring that the Road be maintained and that the lot owners pay a pro-rata share of the cost of such maintenance. However, it provides that "each [o]wner shall pay to such [p]erson at such place as *the Committee* may direct that installment of the [a]ssessment which is due during such period. *The Committee* shall establish one or more payment periods and the due dates for each such payment in each fiscal year." (Emphases added.) While Paragraph 22 of the Second Amendment provides that "[e]ach [o]wner of a [l]ot shall pay to the Association all [a]ssessments and other charges as determined by the Committee and *assessed by the Association pursuant to the provisions of this Declaration*" (emphasis added), no provision empowers the Association to make such an assessment.[9] Under Paragraph 21, the assessment for

---

[9] Although Paragraph 27 makes any lot owner liable to the Association for its costs, and provides that such costs "may be assessed against" the lot owner, the express language of that provision only makes the assessment discretionary. It does not indicate what entity determines whether or how much of such costs actually will be imposed as an assessment. In any event, the costs which could, theoretically, be imposed as an assessment under this paragraph relate to "expense of all upkeep rendered necessary by such [o]wner's act or omission regardless of neglect or liability, but only to the extent that such expense is not covered by the proceeds of insurance carried by the Association." Consequently, from this context, the costs that may be

maintenance is made by the Committee, not the Association. Under Paragraph 21, the Committee, not the Association, determines what the assessment for maintenance is, when it is due, and to whom it is paid. This is underscored by Paragraph 23, which provides that "[t]he Committee may file or record" a lien on the lot of any owner who fails to pay his or her assessment, and Paragraph 30, which provides that if any lot owner is more than thirty days late paying his or her assessment, "interest from the due date at a rate of six percent per annum may be imposed in the discretion of the Committee."

Turning to other provisions dealing with assessments, Paragraph 32 authorizes the Committee to "impose charges" upon an owner for violating the Second Amendment, and that such "[c]harges are assessments and shall be collectible as such and shall also constitute a lien against a lot." Paragraph 33 provides that "[t]he Committee, before imposing any charge shall afford" the affected lot owner "the due process rights set forth in Section 55-513" of the Act.

In fact, all references in the Second Amendment to any entity having power or responsibility under the Act, like Paragraph 33, refer to the Committee, not the Association. Paragraph 23 empowers the Committee to record a lien for unpaid assessments "to confirm the establishment and priority of such lien by Section 55-516" of the Act. Paragraphs 25 and 37 provide that "[t]he Committee is authorized to adopt" measures to enforce the Second Amendment as permitted by the Act.

In short, nothing in the Second Amendment either imposes upon the Association a duty to maintain the Road or authorizes it to impose assessments for the costs of such maintenance. The Association therefore does not fulfill either of the requirements to qualify as a "property

---

assessed under Paragraph 27 appear to relate to repairs necessitated by damages caused by a lot owner, not maintenance.

owners' association" within the meaning of the Act.  Accordingly, the circuit court did not err by ruling to that effect and we will affirm this portion of its judgment.

### III.  CONCLUSION

For the reasons set forth above, we will reverse the judgment of the circuit court.  Noting that the final order of the circuit court directed the clerk of that court to record the order among the land records of Fauquier County, we will remand the case for further proceedings consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*