COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and AtLee
Argued at Fredericksburg, Virginia

ASHBURN VILLAGE COMMUNITY
 ASSOCIATION, INC.

MEMORANDUM OPINION[*] BY
v.      Record No. 0169-23-4         JUDGE RICHARD Y. ATLEE, JR.
                                     JULY 23, 2024

WALTONWOOD ASHBURN, LLC

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Mark P. Graham (Mariam W. Tadros; John D. Perry; Louise T.
Gitcheva; Rees Broome, PC, on briefs), for appellant.

John Rinaldi (Erin Swisshelm; Walsh, Colucci, Lubeley & Walsh,
P.C., on brief), for appellee.

Ashburn Village Community Association, Inc. (the "Association") appeals the circuit

court's order sustaining Waltonwood Ashburn, LLC's demurrer to the Association's third amended

complaint that alleged breach of contract and sought injunctive relief. On appeal, the Association

asserts that the circuit court erred in sustaining the demurrer because the Association accurately pled

that Waltonwood violated the Association's Commercial Declaration, or alternatively Residential

Declaration, by rezoning the property without permission and by failing to pay required

assessments. The Association also claims that the circuit court erred in sustaining Waltonwood's

demurrer to its second amended complaint, in which the Association sought a declaratory judgment.

For the following reasons, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. BACKGROUND

In reviewing a circuit court's judgment sustaining a demurrer, "we 'accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff.'" *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "Furthermore, we draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.*

## A. *Factual History*

The Association is a homeowners' association that oversees both commercial and residential lots. It is governed by the Commercial Declaration for the Association (the "Commercial Declaration") and by the Amended and Restated Residential Declaration for Ashburn Village Community Association, Inc. (the "Residential Declaration"). The Commercial Declaration and the Residential Declaration outline the rights and obligations of property owners located within the Association's purview.

Waltonwood purchased real property (the "Property") in the Ashburn Village Office Park, an area the Association governs, from B.F. Saul Real Estate Investment Trust in September 2013. The parties do not dispute that shortly before Waltonwood's purchase, the Property qualified as a commercial lot under the Commercial Declaration and was subject to commercial assessments under that declaration. The Commercial Declaration defines a commercial lot as property used for nonresidential purposes and specifically included lots that contained "daycare facilities, offices, commercial condominium units, retail uses, restaurants, hotels, [and] golf courses," or other "similar uses." The Commercial Declaration specifically states that "[t]he references to Lots in this Commercial Declaration generally refer[] only to Commercial Lots unless specifically stated as otherwise." It defines an owner as a person who owns a lot in fee

simple and states that "[w]hen the term Owner is used herein it means an Owner of a Commercial Lot unless specifically indicated otherwise." Article 6 of the Commercial Declaration provides for "Common Expenses and Assessments," and it requires every owner to pay assessments to the Association.

In 2013, two months before Waltonwood purchased the Property, the Loudoun County Board of Supervisors approved rezoning of the Property from "PD-IP" (Planned Development – Industrial Park) to "PD-AAAR" (Planned Development – Active-Adult Age-Restricted). B.F. Saul sought to rezone the Property to permit the development of a congregate care facility for elderly adults. Relevant to this appeal, Article 1 of the Commercial Declaration differentiates an elderly congregant care facility from a commercial lot, and it deems such facility a "Multifamily Residential Lot." It defines a multifamily residential lot as a lot primarily intended for use as a residence, containing multiple dwellings, and it specifically includes, "without limitation," lots that contain "elderly congregate care facilities."

Section 16 of the Commercial Declaration forbids an owner from rezoning a property without the Association's approval. The parties do not dispute that B.F. Saul did not seek approval from the Association to rezone the Property.

Section 4.3 of the Commercial Declaration further provides for "Change of Use," and it states that once a property subject to the declaration is rezoned or used for residential purposes, then the Association could withdraw the property from the Commercial Declaration if the property could be subject to the Residential Declaration. The parties do not dispute that the Association took no action to withdraw the Property from the Commercial Declaration.

When Waltonwood purchased the Property, it obtained a special warranty deed which provided that the Property was "subject only to those matters of record, validly existing and applicable to the Property," including the "covenants, conditions, restrictions, easements and

assessments as set forth in the Declaration of Covenants, Conditions and Restrictions," as well as the "covenants, conditions and restrictions as set forth in the Deed."

Waltonwood ultimately constructed an elderly congregate care facility upon the Property. The parties do not dispute that Waltonwood did not pay any assessments to the Association following its purchase of the Property.

B. *Circuit Court Proceedings*

The Association filed its initial complaint against Waltonwood alleging one count for breach of contract, due to Waltonwood's failure to pay assessments under the Residential Declaration. Waltonwood filed a plea in bar, arguing that the Property was not subject to the Residential Declaration. The Association then filed an amended complaint alleging breach of contract and sought a judgment for assessments due under the Commercial Declaration.

The Association later moved to file a second amended complaint, which the circuit court granted. In the second amended complaint, the Association alleged breach of contract based on Waltonwood's failure to pay assessments under the Commercial Declaration. In Count II of the second amended complaint, the Association also sought a declaratory judgment that Waltonwood rezoned the Property without permission and asked the circuit court to withdraw the Property from the Commercial Declaration, and subject it to the Residential Declaration, thereby requiring Waltonwood to pay assessments under the Residential Declaration. Waltonwood filed a demurrer to the Association's second amended complaint. The circuit court again sustained the demurrer with leave to amend.

The Association filed a third amended complaint. In Count I, the Association alleged breach of contract, based on Waltonwood's failure to pay the monthly assessment obligations, as required by the Commercial Declaration. In Count II, the Association offered an alternative argument that, to the extent Waltonwood was subject to the Residential Declaration, it breached

the Residential Declaration by failing to pay assessments. Finally, in Count III, the Association sought injunctive relief, arguing that Waltonwood failed to obtain approval to rezone and operate as a non-commercial lot and operate an elderly congregate care facility.

Waltonwood demurred to the third amended complaint. Waltonwood alleged that it was not liable for assessments under the terms of the Commercial Declaration, because it was an owner of a multifamily residential lot, rather than a commercial lot; and that only owners of commercial lots were required to pay assessments. Waltonwood also asked the circuit court to dismiss Count II, claiming that it was not liable for assessments under the Residential Declaration, and the Association failed to take the necessary steps, pursuant to the "Change of Use" provisions, to remove the Property from the Commercial Declaration and place it under the Residential Declaration. Finally, Waltonwood claimed that the Association failed to plead facts to support an injunction. Specifically, Waltonwood argued that the Association failed to allege that Waltonwood was likely to rezone the Property again without permission and that the Association suffered no irreparable harm. Moreover, Waltonwood argued that the Association is "the *only* party with the power and authority to remedy the alleged violation of the Commercial Declaration. The Association need only take the steps set forth in Section 4.3 of the Commercial Declaration to remedy the alleged violation."

The Association opposed the demurrer. The Association claimed that Waltonwood breached the Commercial Declaration by rezoning the Property from commercial to residential use without seeking the Association's approval and that Waltonwood could not evade assessments following this breach. The Association also alleged that to the extent that Waltonwood was not obligated to pay assessments under the Commercial Declaration because it was a multifamily residential lot, Waltonwood was required to pay assessments under the Residential Declaration. Regarding injunctive relief, the Association argued that the

- 5 -

Commercial Declaration provided that an owner was in default when it failed to comply with the terms of the Commercial Declaration, and because Waltonwood violated the Commercial Declaration by rezoning without permission, the Association was "entitled to enforce those rights, to include obtaining an injunction."

Waltonwood responded to the Association's opposition, by arguing that it is not liable for assessments under the Commercial Declaration or Residential Declaration. Waltonwood conceded that title to the Property was subject to the Commercial Declaration, but it argued that it was not subject to any assessments, as it was not an owner of a commercial lot under that Commercial Declaration. Waltonwood argued that Section 4.3 of the Commercial Declaration provided that the Association, not Waltonwood, had the power and authority to remove property from the Commercial Declaration, and to add property to the Residential Declaration. Until the Association did so, Waltonwood had no obligation to pay assessments under the Residential Declaration. Waltonwood also responded that it had no obligation to seek approval before rezoning because, at the time of the rezoning, Waltonwood did not own the Property—B.F. Saul did. Waltonwood finally claimed that the Association is not entitled to an injunction.

The parties convened for a hearing regarding Waltonwood's demurrer. Following the hearing, the circuit court entered a written order sustaining Waltonwood's demurrer to all counts in the amended complaint. The circuit court did not grant the Association leave to amend and dismissed the matter with prejudice. The Association now appeals.

## II. ANALYSIS

The Association challenges the circuit court's order sustaining Waltonwood's demurrer to each count of the third amended complaint. "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC v. ITech AG*, 300 Va. 260, 264 (2021). "We examine

the circuit court's decision to sustain [a] demurrer under a de novo standard of review because it is a pure question of law." *Butler v. Stegmaier*, 77 Va. App. 115, 125 (2023) (alteration in original) (quoting *Wilburn v. Mangano*, 299 Va. 348, 353 (2020)).

A. *The Commercial Declaration*

The Association argues the circuit court erred in sustaining Waltonwood's demurrer to Count I, alleging that it adequately pled that Waltonwood was subject to the restrictive covenants contained in the Commercial Declaration and that Waltonwood violated a restrictive covenant in the Commercial Declaration by rezoning the Property without first seeking the Association's approval. Due to this breach, the Association argues that Waltonwood "could not excuse itself from its assessment obligations" and that Waltonwood's "failure to pay assessments violated restrictive covenants that run with the land."

"Restrictive covenants 'are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions.'" *Sainani v. Belmont Glen Homeowners Ass'n*, 297 Va. 714, 723 (2019) (quoting *Scott v. Walker*, 274 Va. 209, 213 (2007)). "Virginia courts should 'enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable' and 'if it is apparent from a reading of the *whole instrument* that the restrictions carry a certain meaning by definite and necessary implication.'" *Id.* (quoting *Shepherd v. Conde*, 293 Va. 274, 288 (2017)).

In support of its argument that Waltonwood's rezoning was a material breach, the Association relies on Section 16 of the Commercial Declaration, which states that an owner may not rezone without the Association's approval. The Association contends that "Waltonwood never requested or obtained the approval of either the Association or the Declarant for rezoning the

Property," and, therefore, "Waltonwood's rezoning of the Property constituted a material breach of the Commercial Declaration."

Article 16, however, places the obligation to seek approval to rezone property on the lot's "Owner." The Commercial Declaration defines owner as the person that owns the lot in fee simple. B.F. Saul, not Waltonwood, owned the Property at the time of the rezoning. The Association does not dispute that Waltonwood did not obtain title to the Property until two months after the Board of Supervisors approved the rezoning application. Thus, Waltonwood was not the owner of the Property when the Property was rezoned and had no obligation to the Association to seek approval. We therefore reject the Association's argument that Waltonwood's "unilateral decision to rezone the property" constituted a breach of the Commercial Declaration.

The Association also contends that "it is incredible that Waltonwood, after willfully breaching Section 16 of the Commercial Declaration, would subsequently refuse to pay the Assessments on the grounds that it is not an Owner." Waltonwood responds that the Property was subject to the Commercial Declaration, and "under the clear terms of the Commercial Declaration, Waltonwood is not subject to any assessments."

We agree with Waltonwood. At the time Waltonwood took title to the Property, it had been zoned as an elderly congregant care facility. The Commercial Declaration distinguishes an elderly congregant care facility from a commercial lot and designates such a facility as a multifamily residential lot. Moreover, it explicitly provides that the term owner meant an owner of a commercial lot "unless specifically indicated otherwise." Section 6.5 of the Commercial Declaration states that "[e]ach Owner shall pay to the Association all Assessments and other charges assessed by the Association pursuant to the provisions of this Declaration." Neither this section, nor any others in the Commercial Declaration, specifically assesses fees for multifamily residential lots.

Throughout the duration of Waltonwood's ownership of the Property, it was zoned as a "Multifamily Residential Lot." Thus, under the plain language of the Commercial Declaration, Waltonwood was not an "Owner" of a commercial lot, and thus, not liable to the Association for any payment of assessments pursuant to the Commercial Declaration. "[W]hen the terms of a restrictive covenant 'are clear and unambiguous, the language used will be taken in its ordinary signification, and the plain meaning will be ascribed to it.'" *Barris v. Keswick Homes, L.L.C.*, 268 Va. 67, 71 (2004) (quoting *Marriott Corp. v. Combined Props. Ltd. P'ship*, 239 Va. 506, 512 (1990)). As such, the circuit court did not err in sustaining Waltonwood's demurrer to Count I of the third amended complaint.

B. *The Residential Declaration*

The Association also argues that the circuit court erred in sustaining the demurrer to Count II of the third amended complaint because, if Waltonwood was not subject to the Commercial Declaration, then it had to be subject to the Residential Declaration because every lot under its purview is subject to either the Residential Declaration or the Commercial Declaration. In support of its argument, the Association alleges that "[a]ssuming, for the sake of argument, that the rezoning caused the Property to become a Multifamily Residential Lot under the language of both the Commercial and Residential Declarations, then Waltonwood became obligated to pay assessments owed under the Residential Declaration at the time of rezoning."

As noted above, we will "'enforce restrictive covenants when the intention of the parties is clear and the restrictions are reasonable' and 'if it is apparent from a reading of the *whole instrument* that the restrictions carry a certain meaning by definite and necessary implication.'" *Sainani*, 297 Va. at 723 (quoting *Shepherd*, 293 Va. at 288). The Association does not cite any provision in either the Commercial or Residential Declaration that states that every lot in its purview is subject to assessment. Rather, in making its argument that Waltonwood alternatively owed assessments under

the Residential Declaration, the Association disregards Section 4.3 of the Commercial Declaration, which provides that if property covered by the declaration was rezoned for residential purposes, then the Association, acting through its Board of Directors could withdraw the property from the Commercial Declaration, and immediately subject the property to the Residential Declaration. As Waltonwood explains, "[t]he Commercial Declaration does not put the onus on the property owner to make a request for the change." Rather, the plain language of the Commercial Declaration requires the Association to withdraw a property from the Commercial Declaration. Again, when the terms of the covenant are clear, we ascribe to the plain meaning of those terms. *Barris*, 268 Va. at 71. Because the Association failed to withdraw the Property from the Commercial Declaration, the Property was not subject to the Residential Declaration. We therefore hold that the circuit court did not err in sustaining Waltonwood's demurrer to Count II of the third amended complaint.

C. *Injunction*

In addition, the Association asserts that the circuit court erred in sustaining the demurrer to Count III of the third amended complaint. In Count III, the Association requested an injunction against Waltonwood using the Property as an elderly congregant care facility, on the grounds that Waltonwood "violated the property rights vested to the Association by failing to obtain approval prior to rezoning as required by" the Commercial Declaration. As such, the Association argues that, under Code § 55.1-1828(A), it had the right to seek injunctive relief against Waltonwood for breaching the Commercial Declaration.

"[A]n injunction is the appropriate remedy for enforcement of a real property right." *Norfolk S. Ry. v. E.A. Breeden, Inc.*, 287 Va. 456, 464 (2014). A "party seeking to enforce a real covenant is generally entitled to the equitable remedy requested upon showing the validity of the covenant and its breach." *Id.*

The Association's argument fails because, as discussed above, Waltonwood was not the owner of the Property at the time of the rezoning. To the extent that the rezoning violated the Commercial Declaration, it was B.F. Saul, the owner of the Property at the time of the rezoning, that violated the Commercial Declaration, not Waltonwood. The Association brought action against Waltonwood, and any claims the Association has against B.F. Saul related to the rezoning of the Property are not relevant to the instant action. We therefore find the circuit court did not err in sustaining Waltonwood's demurrer to Count III of the third amended complaint.

D. *Declaratory Judgment*

Finally, the Association contends that the circuit court erred in sustaining the demurrer to Count II of the second amended complaint in which the Association sought a declaratory judgment. Although the circuit court granted the Association leave to amend, the Association did not include a count for declaratory judgment in its third amended complaint, nor does the third amended complaint incorporate or refer to the second amended complaint. "[W]hen, as here, a circuit court sustains a demurrer to an amended complaint that does not incorporate or refer to any of the allegations that were set forth in a prior complaint, 'we will consider only the allegations contained in the amended pleading to which the demurrer was sustained.'" *Ayers v. Shaffer*, 286 Va. 212, 217 (2013) (quoting *Lewis v. Kei*, 281 Va. 715, 719 (2011)). Because the Association did not seek a declaratory judgment in the third amended complaint, we do not consider the Association's fourth assignment of error.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's ruling.[1]

*Affirmed.*

---

[1] Waltonwood filed a motion to dismiss, citing Rule 5A:3 and contending that the Association untimely filed their assignments of error. Waltonwood, however, does not claim any prejudice due to the untimeliness. Waltonwood further claims that the Association's assignments of error were insufficient because they did not address the circuit court's rulings. The Court, however, provided the Association with the opportunity to file an amended brief, and the Association's amended filing complies with Rule 5A:20(c)(2). We therefore deny Waltonwood's motion to dismiss.