Present:  All the Justices

WILLIAM D. SCOTT, ET AL.

v.  Record No. 061410  OPINION BY JUSTICE CYNTHIA D. KINSER
                                            June 8, 2007
DONALD F. WALKER, ET AL.

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

In this appeal, we decide whether a restrictive
covenant stating that certain real property "shall [not] be
used except for residential purposes" prohibits the short-
term rental of a single-family dwelling.  Because we find
the restrictive covenant ambiguous, we construe it in favor
of the free use of land and will therefore reverse the
judgment of the circuit court enjoining the nightly and
weekly rental of the property at issue.

FACTS AND PROCEEDINGS[1]

William D. Scott and Suzanna C. Scott own certain real
property situated in the Smith Mountain Lake resort area of
Bedford County.  Their property is designated as lot 53 in
section 2 of the Harbor Village Subdivision.  The Scotts
acquired their property in May 2003, and their deed recites
that the conveyance is subject to, among other things, all
restrictions affecting the property.  Donald F. Walker and
Charlotte O. Walker own lots 66 and 67 in section 2 of the

_____

[1]  The parties stipulated to the relevant facts.

same subdivision. The Walkers' lot 67 and the Scotts' property share a common boundary line.

Section 2 of the Harbor Village Subdivision is subject to certain restrictive covenants that were recorded in the clerk's office of the Circuit Court of Bedford County in 1979.[2] The following restrictive covenant concerning use of the lots is at issue in this appeal:

> LAND USE AND BUILDING TYPE: No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half (2 1/2) stories in height, a private garage for not more than two cars, boat dock and boat houses. No lot or lots in said subdivision can be re-subdivided except a lot may be subdivided providing each part is allotted to an adjoining lot.

By letter dated April 9, 2003, the trustees for Harbor Village Subdivision provided a copy of the restrictive covenants to the Scotts.

Sometime after acquiring their property, the Scotts began leasing their single-family dwelling on a nightly and weekly basis. In March 2004, the Walkers filed a bill of complaint seeking to enjoin the Scotts from doing so. The Walkers alleged that the short-term rental of the Scotts' property violated the restrictive covenant prohibiting use of the lot "except for residential purposes." Upon

---

[2] The trustees of the subdivision restated the restrictive covenants in 2004.

2

considering the parties' stipulation of facts, memoranda, and oral argument, the circuit court granted injunctive relief to the Walkers and enjoined the Scotts "from nightly and/or weekly rentals of their real property in the Harbor Village Subdivision." The circuit court reached the following conclusions:

> [(1) T]he plain and ordinary meaning of the term "residential purposes" encompasses both a type of use and duration of use . . . ; (2) "Residence" means more than mere physical presence and less than domicile; (3) [A] strict construction of the covenant prohibiting lots from being used "except for residential purposes" excludes rental of the real property on a nightly or weekly basis; and (4) [T]he lease/rental of the real property on a nightly or weekly basis is not a use for "residential purposes" and thus, violates the restrictive covenant prohibiting lots from being used "except for residential purposes."

This appeal by the Scotts ensued.

ANALYSIS

The question before us is whether the restrictive covenant stating that "[n]o lot shall be used except for residential purposes" prohibits rental of the subject property on a nightly and/or weekly basis. The facts are not in dispute. The circuit court's interpretation of the restrictive covenant is, however, a question of law, which we review de novo. Turner v. Caplan, 268 Va. 122, 125, 596 S.E.2d 525, 527 (2004).

3

When, as in this case, the interpretation and enforcement of a restrictive covenant concerning real property is at issue, we are guided by certain legal principles:

> It is . . . the general rule that while courts of equity will enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable, they are not favored, and the burden is on him who would enforce such covenants to establish that the activity objected to is within their terms. They are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions.

Schwarzschild v. Welborne, 186 Va. 1052, 1058, 45 S.E.2d 152, 155 (1947); accord Waynesboro Village, L.L.C. v. BMC Properties, 255 Va. 75, 80, 496 S.E.2d 64, 67-68 (1998); Bauer v. Harn, 223 Va. 31, 39, 286 S.E.2d 192, 196 (1982); Jernigan v. Capps, 187 Va. 73, 78, 45 S.E.2d 886, 889 (1948). "However, if it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning by definite and necessary implication, then the thing denied may be said to be clearly forbidden, as if the language had been in positive terms of express inhibition." Bauer, 223 Va. at 39, 286 S.E.2d at 196 (citing Friedberg v. Riverpoint Bldg. Comm., 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977)).

4

The Walkers argue that the term "residential purposes" is not ambiguous and that this Court has historically defined the terms "residential" and "residence" to encompass a "duration of time" element.  Continuing, the Walkers distinguish a residential use from a temporary or transient use and assert that the Scotts' nightly and/or weekly rental of their lot falls into the latter category and, thus, violates the restrictive covenant at issue.  In urging this Court to affirm the circuit court's judgment, the Walkers do not rely on the Scotts' receipt of rental income as a basis for challenging the Scotts' use of their lot.

The Scotts, however, assert that the restrictive covenant neither expressly nor by necessary implication prohibits the short-term rental of their lot in Harbor Village Subdivision.  They point out that the restrictive covenant is actually silent as to the rental or lease of real property and argue that any lease of their lot, regardless of its length, is a residential use of their property.  The Scotts further contend that the phrase "residential purposes" is ambiguous and that the circuit court erred by considering "duration of use" as a factor in determining what constitutes "residential purposes." Finally, they contend that, if the developer had intended

5

to prohibit short-term rentals of the lots in Harbor Village Subdivision, specific language to that effect could easily have been included in the restrictive covenants.

Both parties cite several decisions from other jurisdictions in support of their respective positions. Compare Yogman v. Parrott, 937 P.2d 1019, 1023 (Or. 1997) (short-term rental of lot did not violate restrictive covenant requiring that the lot "be used exclusively for residential purposes"), with O'Connor v. Resort Custom Builders, Inc., 591 N.W.2d 216, 220–21 (Mich. 1999) (interval ownership in a home violated restrictive covenant prohibiting use of a lot "except for residential purposes"). They also discuss several of this Court's decisions that they agree are not directly on point. Our prior decisions, however, are instructive. We turn now to those cases.

First, in Deitrick v. Leadbetter, 175 Va. 170, 8 S.E.2d 276 (1940), the restrictive covenant at issue stated that certain property "shall not be used except for residential purposes." Id. at 173, 8 S.E.2d at 277. The owner admitted that she bought her home with the intention to use it as a tourist home, not as a private residence, and did in fact use it for that purpose. Id. The home contained four tourist bedrooms, along with a dining room

6

and kitchen, in which the owner and her family lived.  Id.
We affirmed the trial court's judgment enjoining the
owner's operation of a tourist home because it could not be
"seriously questioned" that she was operating a business.
Id. at 174, 8 S.E.2d at 278.  Thus, we concluded that, "if
it is a business, then this lot is not being used for
'residential purposes.'"  Id.  We further noted that
"[b]oarding houses are not private residences, and, on
principle, it makes no difference if the boarder stays one
day or two."  Id. at 175, 8 S.E.2d at 278.  We agree with
the Scotts' observation that the critical factor in
Deitrick was the owner's use of her home as a business, not
the length of her boarders' stays.

Next, in Schwarzschild, the owner rented rooms in her
home to others, but she did not furnish meals to her
boarders.  186 Va. at 1054–55, 45 S.E.2d at 153–54.  The
question before the Court was whether such use of the
owner's home violated a restrictive covenant requiring that
"there shall not be erected more than two dwellings" and
that "such improvements shall be a dwelling or two
dwellings."  Id. at 1057, 45 S.E.2d at 154–55.  In
answering that question, we first pointed out that the
restrictive covenant did not expressly prohibit the owner's

rental of rooms in her house.  Id. at 1058, 45 S.E.2d at 155.  We then asked these questions:

> Is it a necessary implication from the words of the restriction?  Is it clear and not doubtful that by limiting the building on the lot to a dwelling or two dwellings, it was intended that nobody should dwell in the dwelling except the owner and his family?  If that had been intended, it would have been easy to say so, and it would not likely have been left to the uncertainty of inference.

Id.

Since the restrictive covenant did not "limit the use of the property to 'a private dwelling,' or to 'a single family dwelling,' " we concluded that the owner's rental of rooms in her home did not "convert[] the dwelling to a business use more than does an apartment house."  Id. at 1062–63, 45 S.E.2d at 157.  We refused to broaden the language of the restrictive covenant to include a prohibition that did not appear "in [its] terms or by necessary implication."  Id. at 1063, 45 S.E.2d at 157.

We also distinguished the facts in Deitrick, pointing out that the restriction there was broader and the use was different.  Id. at 1064, 45 S.E.2d at 158.  Unlike the transient guests in Deitrick, the guests in Schwarzschild expected their stays to last as long as their business permitted, and the restrictive covenant limited the use of the property to a dwelling, not to a private residence.

8

*Id.* at 1064–65, 45 S.E.2d at 158.  Referring to the tourist home in *Deitrick*, we stated, "A house is not being used for 'residential purposes' by tourists who spend the night." *Id.* at 1065, 45 S.E.2d at 158.

Finally, in *Jernigan*, a one-story, four-family apartment building was to be erected on a lot subject to restrictive covenants requiring that " 'only one residential building . . . shall be erected on any lot' " and ' "the use of the land shall be restricted to residential purposes.' "  187 Va. at 75–76, 45 S.E.2d at 887–88.  The question before the Court was whether the proposed building violated those particular restrictive covenants.  *Id.* at 77, 45 S.E.2d at 888.  The Court found no express terms in the restrictive covenants forbidding "the erection of 'an apartment house' or 'a multiple family residence.'"  *Id.* at 79, 45 S.E.2d at 889.  We further concluded that the language in the restrictive covenants did not "prohibit[] by necessary implication the erection of the proposed building."  *Id.*  We interpreted the restrictive covenants at issue as having two purposes:  to prohibit "the erection of more than a single building on a single lot" and to limit "the type of the structure and its use to that of a 'residential building.'"  *Id.* at 80, 45 S.E.2d at 889.  Since the proposed structure conformed to

9

the first purpose, the only question was whether the structure was a "residential building."  Id.

In answering that question, we first looked to the plain and ordinary meaning of the term "residential building" and stated that "such a building is one which is used for residential purposes, – that is, one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes."  Id. at 80, 45 S.E.2d at 890.  But, we also considered the definitions of the terms "residential" and "residence."  Id.  In part, the definition of "residential" was:  " 'Used, serving, or designed as a residence or for occupation by residents.' "  Id. (quoting Webster's New International Dictionary, 2d Ed.).  The term "residence" was defined as:  " 'The place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode.' "[3]  Id.  We then concluded that the building, which was designed to accommodate four families, was a "residential building" and

---

[3]  Today, Webster's continues to define "residential" to mean "used, serving, or designed as a residence or for occupation by residents."  Webster's Third New International Dictionary 1931 (1993).  The term "residence" is defined as "the act or fact of abiding or dwelling in a place for some time; an act or making one's home in a place."  Id.

10

that the restrictive covenants did not prohibit its erection. Id. at 83, 45 S.E.2d at 891.

We agree with the Walkers' observation that a transient use of the proposed building was not at issue in Jernigan. In the Court's view, however, the purpose of the restrictive covenant "was to confine the use of the property to residential purposes as distinguished from business or commercial purposes." Id. at 82, 45 S.E.2d at 890–91. We quoted with approval the reasoning of the court in Hunt v. Held, 107 N.E. 765, 766 (Ohio 1914), concluding that "[i]f a building is used as a place of abode and no business carried on, it would be used for residence purposes only when occupied by one family or a number of families." Jernigan, 187 Va. at 82, 45 S.E.2d at 890.

In each of these cases, despite the differences in the respective restrictive covenants, we distinguished the use at issue from a business or commercial use. See also Lowden v. Bosley, 909 A.2d 261, 267 (Md. 2006) (" 'Residential use,' without more, has been consistently interpreted as meaning that the use of the property is for living purposes," and a transitory use does not defeat the residential status); Mullin v. Silvercreek Condo., Owner's Ass'n, 195 S.W.3d 484, 490 (Mo. Ct. App. 2006) ("The plain and ordinary meaning of 'residential purposes' is 'one in

11

which people reside or dwell, or which they make their homes, as distinguished from one which is used for commercial or business purposes.' "). Contrary to the Walkers' argument, we did not consider the length of the tenancy as the determinative factor. Even in Deitrick, where the boarders were clearly transient, we focused on the owner's operation of a business, i.e., a tourist home. In addition, the owners in Deitrick and Schwarzschild were renting several rooms in their respective homes; whereas, here, the Scotts are leasing their entire lot and the single-family dwelling situated on it.

Against the backdrop of our decisions in Deitrick, Schwarzschild, and Jernigan, we turn now to the question whether the restrictive covenant before us prohibits the challenged use. We conclude that it does not. The restrictive covenant does not by express terms prohibit the short-term rental of the Scotts' lot in the Harbor Village Subdivision. See Bruton v. Wolter, 216 Va. 311, 314, 218 S.E.2d 438, 440 (1975) (restrictive covenant did not expressly prohibit rental of a guest cottage). In fact, the restrictive covenant is silent as to leases or rental agreements. We further conclude that the restrictive covenant at issue does not "carry . . . by definite and necessary implication" a prohibition against the Scotts'

12

nightly or weekly rental of their property.  Bauer, 223 Va. at 39, 286 S.E.2d at 196.  As the court in Yogman observed, "if 'residential' refers to an intention to live in a home for more than a temporary sojourn or transient visit, even [the Scotts'] own use of the property, as well as their rental use, is not 'residential.' "  937 P.2d at 1021.  On the other hand, those people who rent the Scotts' property use it as a temporary place of abode and engage in activities normally associated with a dwelling place.  See id.

Instead, we find the restrictive covenant, in particular the phrase "residential purposes," to be ambiguous in several respects.  See Yogman, 937 P.2d at 1021 (finding term "residential" to be ambiguous).  It is ambiguous as to whether a residential purpose is viewed only in contradistinction to a business or commercial use; and, if not so limited, it is ambiguous both as to whether a residential purpose requires an intention to be physically present in a home for more than a transient stay and as to whether the focus of the inquiry is on the owner's use of the property or the renter's use.  Indeed, even the circuit court's interpretation that the term " '[r]esidence' means more than mere physical presence and less than domicile" is ambiguous.  It can be argued that a

nightly or weekly rental is more than mere physical presence. Moreover, if the phrase "residential purposes" carries with it a "duration of use" component, it is ambiguous as to when a rental of the property moves from short-term to long-term.

Under our case law, a restrictive covenant of "substantial doubt or ambiguity" must be interpreted "in favor of the free use of property and against restrictions." Schwarzschild, 186 Va. at 1058, 45 S.E.2d at 155. If the restrictive covenant at issue was intended to prevent the short-term rental of lots in the Harbor Village Subdivision, "it would have been easy to say so, and it would not likely have been left to the uncertainty of inference." Id. In the absence of language expressly or by necessary implication prohibiting nightly or weekly rentals, we find that the Scotts' short-term rental of their property did not run afoul of the restrictive covenant at issue. The Walkers did not carry their burden to establish that the terms of the restrictive covenant prohibited the activity to which they objected. See Schwarzschild, 186 Va. at 1058, 45 S.E.2d at 155.

CONCLUSION

14

For these reasons, we will reverse the judgment of the circuit court and enter final judgment in favor of the Scotts.

<u>Reversed and final judgment</u>.