PRESENT: All the Justices

SANJAY SAINANI, ET AL.

v. Record No. 181037

BELMONT GLEN HOMEOWNERS
ASSOCIATION, INC.

OPINION BY
JUSTICE D. ARTHUR KELSEY
AUGUST 26, 2019

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

The trial court in this case awarded a monetary judgment, injunctive relief, and attorney

fees and costs to Belmont Glen Homeowners Association, Inc. (the "HOA") in its suit against

SanJay and Sona Sainani for violations of the HOA's guidelines governing the use of holiday

decorations.[1] Because the court erred in finding that the HOA's seasonal guidelines were

enforceable under the HOA's declaration of restrictive covenants, we reverse the court's

judgment and its ancillary award of attorney fees and costs, and we remand this case for further

proceedings consistent with this opinion.

I.

The pertinent seasonal guidelines were first adopted in 2014 by the HOA's Board of

Directors as part of the Community Association Handbook and Architectural Design Guidelines

("HOA Handbook"). These seasonal guidelines state that "[t]he intention of these guidelines is

(1) to promote harmony in the community; (2) avoid discourteous and unsafe conditions

---

[1] During the time period relevant to this case, the HOA revised the disputed guidelines. *Compare* J.A. at 974, 993-94 (containing guidelines for "Seasonal Holiday Decorations" dated August 1, 2014 (altering capitalization)), *with id.* at 1000, 1019-20 (containing guidelines for "Seasonal Decorations" dated October 13, 2015 (altering capitalization)). The Sainanis allegedly violated both the original guidelines and the revised guidelines. Because the revisions do not affect the analysis of the enforceability of either version of the guidelines, we collectively refer to both versions of these guidelines as the "seasonal guidelines" throughout this opinion.

affecting property values; [and] (3) to avoid religious issues in the community." J.A. at 993.

The guidelines permit "tasteful special decorative objects and lighting that are consistent with recognized Federal Holidays, Religious Holidays, Valentine's Day and Halloween" for a specific length of time for four holidays: Halloween, Thanksgiving, Winter Holidays, and the Fourth of July. *Id.* at 994. Outside of these approved holidays, residents must apply to the HOA's Architectural Review Board ("ARB") to display decorations, but residents are limited to 2 such applications per year and no longer than 11 days for each additional display. The guidelines further provide that decorative lighting must be turned off by midnight each evening.

In 2015, the guidelines were revised to state that "[t]he purpose for these guidelines is to avoid the prolonged display of lights and decorations outside the respective holiday." *Id.* at 1019. Additional revisions included adding the holiday Diwali to the list of pre-approved holidays and increasing the time period for the 2 additional displays of decorations to 14 days. The revised guidelines also specifically regulated the use of holiday lighting by limiting the color of Halloween lighting to green, orange, or purple and by prohibiting all lighting displays for Thanksgiving.

Article IX of the HOA's 2014 amended declaration lists the restrictive covenants. The HOA points to several of these covenants as authorizing the seasonal guidelines. Article IX, Section 3 of the amended declaration addresses nuisances and states in its introductory sentence that "[n]o noxious or offensive activity shall be carried on upon the Property, nor shall anything be done or placed thereon which is or may become an annoyance or nuisance to the neighborhood." *Id.* at 839. Paragraph C under the nuisance section is entitled "Lighting" and provides:

> No exterior lighting on a Lot shall be directed outside the
> boundaries of the Lot. Exterior lighting which results in an

2

adverse visual impact to adjacent Lots, whether by location, wattage or other features, is prohibited. The ARB shall have the right to determine whether or not exterior lighting results in an adverse visual impact, which decision may be appealed to the Board.

*Id.*[2] Article IX, Section 4, entitled "Modification," further provides:

No modification or alteration of any Lot, Structure, or any portion thereof, shall be made, installed, constructed, erected, placed, altered and/or externally improved on any Lot or Structure until an Application has been properly filed with, and approved by, the ARB in accordance with the Article and Section hereof entitled, *"ARCHITECTURAL REVIEW BOARD. Applications for Improvements or Alterations"*, and, if required, proper authority has been granted by appropriate authorities and, where required, appropriate construction permits obtained.

*Id.* at 840 (emphasis in original). Article IX, Section 8 permits the HOA "to adopt such rules and regulations regarding this Article as it may from time to time consider necessary or appropriate." *Id.* at 842. Article VIII, Section 5 further gives the ARB authority to "regulate the external design and appearance of the Property and the external design, appearance and location of the improvements thereon in such a manner so as to preserve and enhance property values and to maintain harmonious relationships among structures and the natural vegetation and topography." *Id.* at 837.

Between December 2013 and February 2016, the Sainanis received multiple violation letters from the HOA for their use of holiday lighting. The Sainanis displayed a string of lights on both their front door and on their back-deck railing in celebration of several Hindu, Sindhi,

---

[2] The HOA Handbook includes a section entitled "Exterior Lighting," *id.* at 986, 1012 (altering capitalization), that appears to be authorized by this restrictive covenant. The exterior-lighting guideline states that it "[i]ncludes the altering of lighting which is part of the original structure." *Id.* It further states that "[n]o exterior lighting shall be directed outside of the applicant's property" and that "[p]roposed additional lighting shall not be approved if it will result in adverse visual impact to adjoining neighbors due to location, wattage or other features." *Id.*

and Sikh religious holidays throughout the year.[3] The letters from the HOA outlined violations of seasonal guidelines that prohibited leaving holiday lights on after midnight and displaying holiday lights outside of permitted dates. None of the violation letters mentioned the exterior-lighting guideline, *see supra* note 2, nor was there any mention of or finding that the Sainanis' lighting had "result[ed] in adverse visual impact to adjoining neighbors," J.A. at 986, 1012. After the Sainanis had not responded to the violation letters or complied with the letters' requests to correct the violations through October 2014, the ARB, which oversaw the enforcement of the seasonal guidelines, held a hearing in November 2014 regarding the violations. Despite being mailed notice of the hearing, the Sainanis did not attend the hearing, and the ARB decided to impose a $10 fine for each day that the violations had gone uncorrected for a period of up to 90 days. The ARB mailed their decision to the Sainanis, but they did not correct the violations.

In 2015 and early 2016, the Sainanis again received multiple violation letters from the HOA for their use of holiday lighting, and the ARB held another hearing in January 2016 and imposed the same penalty. At this second hearing, the ARB additionally suspended the Sainanis' HOA voting privileges and their access to HOA facilities until the violations were corrected. The Sainanis again did not attend this hearing and did not correct the violations. A third hearing was scheduled for February 2016 to address the violations, but that hearing was never held because the Sainanis had obtained legal counsel who requested a continuance and because the matter was then in litigation.

---

[3] From "late September or early October . . . until mid-April or even late April" each year, the Sainanis celebrated Navratri, Diwali, the birthday of Guru Nanak, Christmas, Uttarayan, Makar Sankranti, the birthday of Lord Shiva, and Cheti Chand. *Id.* at 411-14. Each celebration lasted anywhere from "9, 18, to 27 days." *Id.* at 415.

In September 2015, the HOA filed a warrant in debt in the general district court against the Sainanis to recover the unpaid fines. The Sainanis did not respond to the suit, and the general district court entered summary judgment for the HOA, which the Sainanis subsequently appealed to the trial court. The Sainanis filed counterclaims against the HOA for the first time in the trial court. At the conclusion of the trial, the court granted the HOA's motion to strike the Sainanis' counterclaims. The court found that the Sainanis' "lights were on 24/7" for "at least 300 days a year" in violation of the seasonal guidelines that prohibited leaving lights on after midnight and displaying lights outside of the permitted holiday periods. *Id.* at 558. The court further found that the Sainanis had never applied for additional lighting displays or for a permanent lighting display despite the opportunity to do so and that the Sainanis had deliberately acknowledged the lighting violations by increasing their payment of HOA dues by $.06 when the dues were $75 and by $.09 when the dues were raised to $90. The trial court entered judgment for the HOA in the amount of $884.17 for the unpaid fines and $39,148.25 in attorney fees and costs. It also enjoined the Sainanis from further violating the seasonal guidelines. The Sainanis timely appealed.

## II.

On appeal, the Sainanis argue that the seasonal guidelines exceed the HOA's authority under the 2014 amended declaration and are thus unenforceable. *See* Appellants' Br. at 32-37. The HOA disagrees because (1) the 2014 amended declaration grants the HOA authority to adopt rules and regulations that supplement the restrictive covenants; (2) the restrictive covenants prohibit nuisances on lots, which consist of "anything 'done or placed thereon which is or may become an annoyance or nuisance to the neighborhood,'" including any exterior lighting causing "an adverse visual impact to adjacent Lots"; and (3) the restrictive covenants prohibit any

5

"modification or alteration of any Lot," even those that "are simply 'placed'" thereon, without the ARB's approval. Appellee's Br. at 22-26 (citations omitted). The Sainanis respond that the HOA's justification for the seasonal guidelines "is not reasonably related to any restrictive covenant and their enforcement is, therefore, arbitrary, capricious and unreasonable." Reply Br. at 12 (emphasis omitted). We agree with the Sainanis.

A.

The proper construction of restrictive covenants is a question of law that we review de novo. *See Fein v. Payandeh*, 284 Va. 599, 605 (2012). As we recently observed, "in keeping with our common-law traditions, Virginia courts have consistently applied the principle of strict construction to restrictive covenants." *Tvardek v. Powhatan Village Homeowners Ass'n*, 291 Va. 269, 275 & n.2 (2016) (collecting cases). Underlying this principle of strict construction is the common-law premise that the "absolute right" to property "consists in the free use, enjoyment, and disposal of all [one's] acquisitions, without any control or diminution, save only by the laws of the land." 1 William Blackstone, Commentaries *138; *see Hamm v. Hazelwood*, 292 Va. 153, 157-58 (2016).

With this common-law underpinning, "the general rule" is that restrictive covenants "are not favored, and the burden is on [the party] who would enforce such covenants to establish that the activity objected to is within their terms." *Scott v. Walker*, 274 Va. 209, 212-13 (2007) (citation omitted). Restrictive covenants "are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions." *Id.* at 213 (citation omitted). Virginia courts should "enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable" and "if it is apparent from a reading of the *whole instrument* that the

6

restrictions carry a certain meaning by definite and necessary implication." *Shepherd v. Conde*, 293 Va. 274, 288 (2017) (emphasis added) (citations omitted).

B.

None of the covenants in the amended declaration can be construed to authorize the seasonal guidelines, and thus, the seasonal guidelines exceed the scope of the HOA's authority.

1.

The only restrictive covenant that directly references exterior lighting is in Paragraph C of Article IX, Section 3. This restrictive covenant is inapplicable because it merely prohibits directing exterior lighting outside the boundaries of the lot and causing any "adverse visual impact to adjacent Lots, whether by location, wattage or other features," J.A. at 839. The seasonal guidelines do not mention "adverse visual impact" at all and do not regulate the "location, wattage or other features," *id.*, of the lighting. *See id.* at 993-94, 1019-20. Instead, the seasonal guidelines regulate the dates and the time of day during which residents may display decorative lighting. The guidelines thus go beyond the scope of the exterior-lighting covenant.[4] Construing this covenant "most strictly against the grantor and persons seeking to enforce [it]," we cannot conclude "that the activity objected to is within [the covenant's] terms," *Scott*, 274 Va. at 212-13.[5]

---

[4] The HOA's violation letters to the Sainanis further belie the HOA's reliance upon the exterior-lighting covenant. The letters never once mention that "adverse visual impact" was a ground for finding a violation or that the lighting was being directed outside the boundaries of the Sainanis' lot, *see id.* at 839. Rather, the letters outline violations for displaying decorative lighting outside of permitted dates and for leaving the lighting on after midnight.

[5] The fact that the HOA Handbook already contains an exterior-lighting guideline further supports the conclusion that the seasonal guidelines are not authorized by the exterior-lighting restrictive covenant. The exterior-lighting guideline repeats much of the same language from the exterior-lighting covenant. *See supra* note 2.

7

We are further unpersuaded by the HOA's interpretation of the prefatory sentence of the nuisance section in Article IX, Section 3 of the declaration as being broad enough to authorize the seasonal guidelines. The contextual construction canons of *noscitur a sociis* and *ejusdem generis* are instructive here.

> Under the rule of *ejusdem generis*, when a particular class of persons or things is enumerated . . . and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words. Likewise, according to the maxim *noscitur a sociis* (associated words) when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words.

*Martin v. Commonwealth*, 224 Va. 298, 301-02 (1982) (citations omitted). Article IX, Section 3 begins by stating that "[n]o noxious or offensive activity shall be carried on upon the Property, nor shall anything be done or placed thereon which is or may become an annoyance or nuisance to the neighborhood." J.A. at 839. This general language is limited by the specific exterior-lighting covenant in subsection C, which, as previously discussed, does not authorize the regulations in the seasonal guidelines.

2.

The HOA relies upon another restrictive covenant, which provides that "[n]o modification or alteration of any Lot, Structure, or any portion thereof, shall be made, installed, constructed, erected, placed, altered and/or externally improved on any Lot or Structure" without an application to and approval from the ARB, *id.* at 840. As noted earlier, we will enforce a restrictive covenant only to the extent that "it is apparent from a reading of the whole instrument" that the restrictive aspects of the covenant "carry a certain meaning by definite and necessary implication." *Shepherd*, 293 Va. at 288 (citation omitted). Because we construe this general restrictive covenant in conjunction with the other restrictive covenants, we conclude that

8

"the general words" of the modifications-and-alterations covenant, with respect to exterior lighting, "are limited by the specific" language of the exterior-lighting covenant, *Martin*, 224 Va. at 302. The exterior-lighting covenant only regulates "adverse visual impact to adjacent Lots, whether by location, wattage or other features," J.A. at 839, not the dates or the time of day that residents may display exterior lighting.

Even if we were to view the modifications-and-alterations covenant in a vacuum, strict-construction principles still do not permit us to read this covenant as broadly as the HOA contends that we should.[6] The covenant provides that no modification or alteration "shall be made, installed, constructed, erected, placed, altered and/or externally improved on any Lot or Structure" without the ARB's approval. J.A. at 840. The HOA focuses on the verb "placed" in this covenant, *id.*, in its argument that the covenant permits the adoption of the seasonal guidelines because the guidelines regulate the timing of holiday-lighting placement. *See* Appellee's Br. at 24 (arguing that the HOA's "authority related to the adoption and enforcement of certain architectural standards . . . is broad, particularly with modifications that impact the exterior appearance of a Lot, even if the modifications are simply 'placed' on the exterior"). We are unpersuaded.

A basic canon of construction requires that "words grouped in a list should be given related meaning." *Third Nat'l Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977). "When several nouns or verbs or adjective or adverbs — any words — are associated in a context suggesting that the words have something in common, they should be assigned a

---

[6] *See* Oral Argument Audio at 26:26 to 27:52 (arguing that the HOA's enforcement action is also supported by the restrictive covenant prohibiting any "alteration or modification of the exterior of [the] lot without the written approval of the ARB," which "includes anything being placed on the exterior of the lot," and agreeing that, under their broad reading of the restrictive covenant, even the placement of a welcome plaque would require approval).

9

permissible meaning that makes them similar." Antonin Scalia & Bryan A. Garner, Reading

Law: The Interpretation of Legal Texts 195 (2012) (describing this principle as a specific

application of the *noscitur a sociis* canon). "The common quality suggested by a listing should

be its most general quality — the least common denominator, so to speak — relevant to the

context." *Id.* at 196. While the HOA attempts to give the verb "placed," J.A. at 840, a

temporary connotation, "the least common denominator" or "most general quality," Scalia &

Garner, *supra*, at 196, of the other verbs in the list is a permanent nature. The other verbs,

"made, installed, constructed, erected, . . . altered" and "improved," J.A. at 840, describe actions

such as constructing a shed, installing a pool, or altering the size of the structure's windows.

Such modifications or alterations are akin to fixtures attached to the realty, and a temporary

string of lights placed on one's front door or back-deck railing is not a fixture. The narrowest

and strictest construction of this covenant requires us to view each of these verbs with permanent

connotations that are not applicable to a temporary display of lights. We thus find the

modifications-and-alterations covenant inapplicable to the facts of this case.

3.

The HOA further contends that the ARB has the authority under Article VIII, Section 5

of the declaration to adopt standards, including the seasonal guidelines, to "regulate the external

design and appearance of the Property . . . so as to preserve and enhance property values and to

maintain harmonious relationships among structures and the natural vegetation and topography,"

*id.* at 837. *See* Appellee's Br. at 24. Strictly construed "from a reading of the whole

instrument," *Shepherd*, 293 Va. at 288 (citation omitted), this provision must be read in

conjunction with the restrictive covenants. Viewed from this perspective, the ARB's authority to

regulate the external design and appearance of a property is much narrower than the HOA

10

suggests. Article VIII, Section 5 states that the "Modification and Change Committee" of the ARB has the power to "regulate all modifications and changes to existing improvements on the Property" and that "[i]n furtherance thereof, the ARB shall" adopt standards, inspect for compliance with those standards, and approve applications for "alterations or additions to Lots." J.A. at 837. When read in conjunction with the restrictive covenants, these powers presuppose that the ARB is merely charged with enforcing the restrictive covenant prohibiting the "modification or alteration of any Lot, Structure, or any portion thereof," *id.* at 840. Strict construction of this covenant limits its application to permanent modifications or alterations. Construing the ARB's power to "regulate the external design and appearance of the Property," *id.* at 837, so broadly as to include the authority to adopt the seasonal guidelines violates strict-construction principles.

Our narrow reading of this power parallels the general rule that design-control powers do not include "an implied power to impose design controls for aesthetic purposes." *See* Restatement (Third) of Property: Servitudes § 6.7 illus. 9 (2000) (illustrating that a rule restricting exterior paint colors is invalid when the declaration of covenants only addresses setback and fence restrictions without mentioning any other design controls); *see also id.* § 6.9 ("Except to the extent provided by statute or authorized by the declaration, a common-interest community may not impose restrictions on the structures or landscaping that may be placed on individually owned property, or on the design, materials, colors, or plants that may be used."). As the Restatement recognizes, design-control powers "are not necessary to the effective functioning of the community," and "powers to control the design of individual properties within the community do not necessarily further public interests or fulfill reasonable expectations of the property owners." *Id.* cmt. a.

11

While *express* design-control powers granted by statute or by the declaration are generally enforceable, the scope of *implied* powers is limited to governing or protecting common property and preventing "nuisance-like activities" on individually owned property. *See id.* § 6.7 & cmt. b.

> The rationale for not giving an expansive interpretation to an association's power to make rules restricting use of individually owned property is based in the traditional expectations of property owners that they are free to use their property for uses that are not prohibited and do not unreasonably interfere with the neighbors' use and enjoyment of their property.

*Id.* cmt. b. Discretionary design-control powers that are not expressly authorized by statute or by the declaration "create two kinds of risks for property owners": property owners (1) "may not be able to develop in accordance with their expectations because they cannot predict how the controls will be applied" and (2) "may be subject to arbitrary or discriminatory treatment because there are no standards against which the appropriateness of the power's exercise can be measured." *Id.* § 6.9 cmt. d. The Restatement warns that "[i]f allowed, completely unfettered design-control powers could depress property values and operate as unreasonable restraints on alienation." *Id.*

For these reasons, we reject the HOA's assertions that it has the "broad" authority to adopt such design-control rules and that it has the implied power to regulate the aesthetics of individually owned lots. Appellee's Br. at 24

4.

Finally, because none of the restrictive covenants address the activities prohibited by the seasonal guidelines, we are further unpersuaded by the HOA's reliance upon the restrictive covenant that permits the HOA "to adopt such rules and regulations regarding [the restrictive covenants] as it may from time to time consider necessary or appropriate," J.A. at 842. In order

12

to be enforceable, such rules and regulations must be "within the scope of [the HOA's] authority" under the enumerated restrictive covenants and the HOA must not "ha[ve] abused its discretion by promulgating arbitrary and capricious rules and regulations bearing no relation to [its] purposes." *Unit Owners Ass'n of BuildAmerica-1 v. Gillman*, 223 Va. 752, 768-69 (1982). The seasonal guidelines are not within the HOA's authority under the restrictive covenants and are thus unenforceable.

III.

In sum, because strict construction principles require us to resolve any questions of "substantial doubt or ambiguity" in the restrictive covenants "in favor of the free use of property and against restrictions," *Scott*, 274 Va. at 213 (citation omitted), we find that the seasonal guidelines — the basis of the fines imposed against the Sainanis — exceed the scope of the restrictive covenants and are not reasonably related to any of them. On this basis, we reverse the trial court's judgment in favor of the HOA and its ancillary award of attorney fees and costs. This case shall be remanded for further proceedings consistent with this opinion.[7]

*Reversed and remanded.*

---

[7] In the trial court, the Sainanis unsuccessfully asserted counterclaims seeking a permanent injunction against the HOA's enforcement of the guidelines; damages for the HOA's breach of the declaration caused by the HOA's enforcement of the guidelines; as well as damages, attorney fees, and costs under the Virginia Property Owners Association Act, Code § 55-515(A), caused by the HOA's enforcement of the guidelines. On appeal, the Sainanis challenge the trial court's dismissal of these counterclaims. Given our ruling that the disputed guidelines are unenforceable, we vacate the trial court's dismissal of the Sainanis' counterclaims and direct the court to reconsider them anew on remand consistent with our holding. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (citation omitted)). Furthermore, given our holding that the seasonal guidelines exceed the scope of the HOA's authority under the declaration, we need not address the Sainanis' challenge to the enforceability of the HOA's 2014 amended declaration. *See id.*