COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Callins and White
Argued at Alexandria, Virginia


DAN CHACKO

                                                      MEMORANDUM OPINION* BY
v.         Record No. 1314-22-4                JUDGE KIMBERLEY SLAYTON WHITE
                                                           FEBRUARY 13, 2024
JOHN R. FORD, JR.


                    FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                                      Jeanette A. Irby, Judge

              Frank A. Edgar, Jr. (Mengxin Cui; Goldstein, Edgar & Reagan;
              Chugh, LLP, on briefs), for appellant.

              Margaret M. Marks (Lauren P. Farrar; Odin, Feldman & Pittleman,
              P.C., on brief), for appellee.


       Dan Chacko alleged that John R. Ford, Jr., the president of his neighborhood's

homeowners' association, trespassed and maintained a private nuisance by entering his

neighborhood lot without permission.  Finding that Ford was within his authority as president,

pursuant to the Declaration of Covenants, Conditions, and Restrictions of the HOA, to enter the

property for a specific purpose, the trial court granted Ford's plea in bar and dismissed the

complaint.  This appeal follows.  For the following reasons, we affirm the trial court's judgment.

                                           BACKGROUND

       Dan Chacko and John R. Ford, Jr. are owners of property in Waterford Heights, a

neighborhood in Loudon County.  Lots in the neighborhood range in size from three to seven

acres.  As lot owners, both are members of the Waterford Heights Homeowners Association

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

(WHHOA). Rules and regulations for the neighborhood are set forth in the WHHOA Declaration of Covenants, Conditions, and Restrictions (Declaration) recorded in the county land records. At the time of the events relevant to this case, Ford was president of the WHHOA.

In April of 2019, Ford went to Chacko's property following complaints that some trees planted on the property by Chacko may have been violations of the Declaration. During that visit, Ford and Chacko discussed the process for obtaining WHHOA approval and walked around the property.

In February of 2020, WHHOA Board members noticed that Chacko had made alterations to his property that had not been approved by the WHHOA, in violation of the Declaration. Initially the alterations included the erection of a pergola and the installation of a driveway culvert. Ford, as president of the WHHOA, notified Chacko of the violations in a letter. Chacko's response made it clear to the WHHOA that he would not cooperate with them nor engage in the approval process. Chacko emailed Ford stating, "Going forward do not enter my property without my permission unless you want to face serious consequences." The WHHOA Board determined that it would begin the process of levying a restoration assessment, a process established by the Declaration.

Article III, § 4(b) of the WHHOA Declaration states:

> The Board of Directors may levy a "restoration assessment" upon any Lot whose Owner fails to maintain a Lot and any improvements thereon in a manner satisfactory to the Board. The restoration assessment shall be utilized by the Association to repair, maintain, and restore the Lot and the exterior of any improvements erected thereon, and the Association shall have the right, through its agents and employees, to enter upon the Lot for such purposes.

The Declaration in Art. IX, § 1(b) states:

> Prior to the levy of a restoration assessment under Article III, Section 4(b) or an assessment of charges as provided for herein for a violation of the Covenants and Restrictions or other violations of

the Declaration, the Member shall be given notice of the violations and if the alleged violations are not cured within thirty (30) days of said notice the Board shall deliver to the lot owner notice of a hearing before the Board as to such uncured violation. The hearing shall be conducted fourteen (14) or more days from delivery of the notice. The lot owner shall have the right to be represented by counsel. The amount of any charges so assessed shall not exceed fifty dollars for a simple offense or ten dollars per day for any offense of a continuing nature and shall be treated as an assessment against the member's Lot. In the event of a restoration assessment, charges levied by the Association, if any, shall be in addition to the amount of the restoration assessment.

According to Ford, in order for the Board to engage in the restoration process, they would need to gather information to "understand the scope of what the alterations are . . . [to] get a cost for what it would take to restore." Ford determined that the next step in the process was to take photographs of the WHHOA violations.

About four days later, Ford again went to Chacko's property. There he found a pergola on the side yard and a driveway culvert. While the culvert was easily observed from the neighborhood road, only the top of the pergola could be seen without entering the lot. Ford photographed the culvert, the structure, and the surrounding area. In order to photograph the entire pergola, including the foundation, Ford went onto Chacko's lot.

Following that visit, the WHHOA Board sent a letter to Chacko requesting that he cure the violations within 30 days. The letter also informed Chacko of the initiation of the restoration assessment process. Chacko not only did not cure the violations, but he also marked his property with "red flags that were outlining a second driveway starting at the culvert going into the property."

Ford next went to the Chacko property in early March 2020 after the WHHOA had been informed that construction work was continuing on Chacko's property. He confirmed the continued existence of the pergola. He also sought information concerning the driveway, an unauthorized alteration to the property. Although some of the proposed driveway could be seen

from the neighborhood road, not all of it was visible.  Chacko, however, escorted Ford off his property.

The WHHOA filed a complaint for injunctive relief in the Loudon County Circuit Court in July 2020.  The trial court found Chacko in violation of the Declaration and granted WHHOA's complaint.  The trial court enjoined Chacko from continuing unauthorized alterations to his property.  It also required the removal of all alterations not in compliance with the Declaration.  The trial court further found that Ford had the authority to enter onto the Chacko property "with respect to the issue of restoration assessments."[1]

Just days following the filing of the complaint against him, Chacko filed the complaint at issue in this case against Ford, personally, alleging trespass, the maintaining of a private nuisance, and intentional infliction of emotional distress.  The trial court sustained a demurrer filed by Ford dismissing Chacko's requests for an injunction of the alleged trespass and maintenance of a private nuisance, his claim of intentional infliction of emotional distress, and his request for attorney fees.[2]

To the remaining counts alleging trespass and the maintaining of a private nuisance, Ford filed a plea in bar asserting that as he was acting on behalf of the WHHOA Board, he could not be personally liable and that his actions were authorized by the Declaration.  Following an evidentiary hearing, the trial court issued a letter opinion and thereafter a final order sustaining the plea in bar finding that "Art. III, § 4(b) of the [WH]HOA's Declaration provided authority for Ford to enter Chacko's property."  The trial court found that Ford had authority "to enter for purposes related to restoration assessments" and "logically include ascertaining whether a

---

[1] Chacko appealed this ruling to this Court.  However, as this Court did not, at the time, have jurisdiction to hear the appeal, it was transferred by order to the Virginia Supreme Court. The Supreme Court refused the appeal.

[2] This ruling is not the subject of this appeal.

restoration assessment is necessary." Further, the trial court found that to hold otherwise would restrict the "ability to levy a restoration assessment . . . to violations that are only visible from outside the violating lot." The trial court concluded, "[s]uch a restriction would defeat the purpose of this provision."[3]

## ANALYSIS

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Id.* (quoting *Massenburg*, 298 Va. at 216). We review de novo "[w]hen the plea in bar depends on pure legal questions." *Id.* (citing *Gerald T. Dixon, Jr., LLC v. Hassell & Folkes, PC*, 283 Va. 456, 459 (2012)).

"The proper construction of restrictive covenants is a question of law that we review de novo." *Sainani v. Belmont Glen Homeowners Ass'n, Inc.*, 297 Va. 714, 722 (2019). "[R]estrictive covenants 'are not favored, and the burden is on [the party] who would enforce such covenants to establish that the activity objected to is within their terms.'" *Id.* at 722 (second alteration in original) (quoting *Scott v. Walker*, 274 Va. 209, 213 (2007)). We construe covenants strictly, "and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions." *Id.* at 723 (quoting *Scott*, 274 Va. at 213).

Restrictions are enforced "where the intention of the parties is clear and the restrictions are reasonable" and "if it is apparent from a reading of the *whole instrument* that the restrictions

---

[3] The trial court overruled the plea in bar on the immunity issue but dismissed the complaint on the authority to enter issue. As such, we only address the authority to enter issue.

carry a certain meaning by definite and necessary implication." *Id.* (quoting *Shepherd v. Conde*, 293 Va. 274, 288 (2017). In other contexts, defining the phrase, "necessary implication is '[a]n implication so strong in its probability that anything to the contrary would be unreasonable.'" *Dumfries-Triangle Rescue Squad, Inc. v. Bd. of Cnty. Supervisors of Prince William Cnty.*, 299 Va. 226, 235 (2020) (alteration in original) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 429 (2012)).

The Declaration, in many places, allows Board members, or other private parties, to enter the owner's property without their permission. For instance, the Board is allowed to let others onto the property to deal with utility issues or to mow unkempt lawns. Chacko argues that under these express terms of the Declaration, the WHHOA and its agents, including its president, may come onto Chacko's lot for only the three reasons expressly stated therein: to mow if he is not mowing, in emergencies, and *after* the WHHOA has levied a restoration assessment and then only to repair, maintain, and restore his lot. Chacko argues that the entry of his property in anticipation of levying a restoration assessment is not one of the permitted entries specifically provided in the Declaration.

Yet Chacko's argument fails to acknowledge that once the WHHOA determines that the owner is found to have "fail[ed] to maintain a Lot and any improvements thereon in a manner satisfactory to the Board," the WHHOA's right to levy an assessment is triggered. Without entry onto the land, as in this case where there is only a partial view of the violations from the roadway, the Board cannot exercise its power to levy an assessment.

His assertion ignores the provisions within the Declaration setting forth the enforcement procedures required once the WHHOA determines a violation is present. Clearly the Declaration, in Art. IX, § 1(b), gives the offending lot owner the right to a hearing, with an attorney present, before a restoration assessment is imposed. In the notice for the hearing, the lot owner is entitled to know

what the violation is. Furthermore, at the hearing a violation is classified as a "simple offense" or an "offense of a continuing nature" to determine what the violation monetary charge amounts to. The violation charge is stated to be "in addition to the amount of the restoration assessment." It only makes sense that once the WHHOA has determined that a violation exists, necessitating the start of the enforcement procedures, the WHHOA would have the information upon which to make these determinations available at the hearing. Likewise, it only makes sense that the offending lot owner and attorney would use the hearing to challenge the gathered information—there is no other forum set forth in the Declaration to do so.

Chacko's assertion also would render the ability to impose a restoration assessment impossible unless the necessity of restoration work required to bring the violation into compliance with the Declaration could be viewed clearly and unequivocally from public areas of the neighborhood. The same can be said for being able to evaluate the extent of necessary restoration work required to bring the violation into compliance with the Declaration. The last sentence of Art. III, § 4(b) contains the authorization for entrance onto the owner's property "for such purposes." Those "purposes" can be found under that same sentence: "to repair, maintain, and restore the Lot and the exterior of any improvements erected thereon." A necessary implication of repairing, maintaining, or restoring is first "assessing" the non-compliant property that requires repairing, maintaining, or restoring. To hold otherwise would be unreasonable.

The trial court found that the stricter construction espoused by Chacko, according to which the Declaration only grants the authority to enter to physically repair, maintain, and restore, and not in anticipation of levying a restoration assessment, was "overly restrictive." The trial court held that the WHHOA's power to enforce restrictive covenants, deduced from a reading of the entire Declaration, created the necessary implication that the WHHOA had the

authority to enter a lot "for purposes related to restoration assessments."  We agree and affirm the trial court ruling sustaining the plea in bar and dismissing the complaint.

## CONCLUSION

After reading the Declaration as a whole and applying a necessary implication, Ford was within his authority as president of the WHHOA to enter Chacko's property to begin the restoration assessment process.  For the reasons stated above, this court affirms the trial court's ruling.

*Affirmed.*